CHEROKEE WATER COMPANY, Appellant,

v.

GREGG COUNTY APPRAISAL DISTRICT and Gregg County Appraisal District Review Board, Appellees.

No. 12–87–00184–CV.

Court of Appeals of Texas, Tyler.

June 30, 1989.

Rehearing Denied Aug. 15, 1989.

William Ikard, Austin, for appellant.

Earl Roberts, Jr., Longview, R. Douglas Muir, Austin, for appellees.

BILL BASS, Justice.

This is an appeal of four ad valorem tax cases originally brought by appellant, Cherokee Water Company (hereinafter Cherokee), under Tex.Tax Code Ann. chs. 41, 42 (Vernon 1982) against appellees for the tax years 1982, 1983, 1985 and 1986. These four cases were consolidated and the issue before the trial court was the determination of the fair market value, as of January 1 of 1982, 1983, 1985, and 1986, of certain portions of appellant's property which were the subject of the four lawsuits. On June 29, 1987, the trial court entered a judgment which fixed the value of appellant's property at amounts less than the appraised value set by the appellees for the 1983, 1985, and 1986 tax years and awarded the appellant attorneys' fees in each of those cases. For the 1982 tax year, the trial court fixed the value at an amount greater than that set by the appellees and no attorneys' fees

were awarded. Although the trial court lowered the appraised value for three of the years in dispute, the appellant appeals the trial court's findings of value in each case. We affirm.

The Cherokee Water Company was incorporated on January 2, 1948. Its purpose, as stated in its Articles of Incorporation, appears as follows:

[T]o construct, maintain, and operate canals, ditches, flumes, feeders, laterals, dams, reservoirs, lakes and wells and for conserving, storing, conducting and transferring water to all persons entitled to the use of same for irrigation, mining, milling, manufacturing, and the development of power to cities and towns for waterworks and for stock raising, as authorized by Article 13.02(32) and Article 75.52.

To accomplish its purpose, the company had acquired approximately 7,100 acres which was to be used to build Lake Cherokee. Lake Cherokee was completed in October of 1948. In June of 1948, Cherokee entered into a water supply contract with the city of Longview. By agreement of the parties, the contract was renegotiated in 1984 and now has primary term of fifty years (until 2035 A.D.) with a renewal option for additional years. The Water Sales Contract and the fees provided therein are a primary source of revenue to Cherokee. The income derived from the sale of water has been predictable and uninterrupted. Based on the current fee arrangement, Cherokee receives over $260,000.00 a year from the city of Longview.

In the late 1950s or early 1960s approximately 23 acres of Cherokee's land was sold, resulting in the present 7,077–acre tract. Since its acquisition, Cherokee has been, and is, the owner of record of the 7,077–acre tract. Cherokee has never endeavored to sell any part of the 7,077–acre tract.

Cherokee is owned by 1,500 stockholders. Inherent in the ownership of each share of stock is the right to lease a specific parcel of the land which fronts on Lake Cherokee.

Owning a share of stock in the water company is the only way an individual can lease a lot and gain access to the lake. Cherokee retains the underlying fee estate in each leased parcel.

Although these leased tracts, or lots, are specifically designated on a company map, no subdivision plat has been filed with the clerk of Gregg or Rusk County. The leases are for a term of one year, with an automatic option for renewal from year to year thereafter indefinitely, conditioned upon the lessee paying the required annual rental fee and, in addition, complying with the rules and regulations of Cherokee. The annual fee was $250 at the time of trial but Cherokee may change the fee at each annual renewal.

Of Cherokee's 7,077 acres, approximately 3,987 acres are currently inundated by a fresh water reservoir known as Lake Cherokee. Fifteen-hundred (1,500) lake-front lots cover approximately 1,121 acres. The remaining 1,969 acres serve, in addition to the leased land, to control and protect the Lake Cherokee watershed. Out of the total 7,077 acres, approximately 1,658 acres are located in Gregg County and the remaining 5,419 acres are located in Rusk County.

The 7,077 acres are subject to taxation by three taxing authorities: (1) Rusk County; (2) Gregg County; and (3) the Kilgore Independent School District (hereinafter KISD). The boundaries of each taxing unit extends to only a portion of the total 7,077 acres. The KISD taxable jurisdiction includes portions of the property in both Rusk and Gregg Counties.

Two appraisal districts appraised the land for the three taxing authorities. The Rusk County Appraisal District appraises for Rusk County all of that portion of land owned by Cherokee that is located in Rusk County (5,419 acres). The Gregg County Appraisal District appraises all of Cherokee's land located in Gregg County (1,658 acres) for Gregg County. The Gregg County Appraisal District appraises for the KISD all of that portion of land owned by

Cherokee that is located within the school district's taxing jurisdiction, including approximately 2,073 acres of Cherokee-owned land that are located in Rusk County.

Cherokee rendered its property for taxes as a single unit. However, it was assessed by the Gregg County Appraisal District in several parcels according to their use or general physical character (lakefront lots, flood plain, greenbelt, lake, etc.). Cherokee accepted the appraised values set for some of the parcels (or accounts), but appealed others.

Cherokee appealed the order of the Gregg County Appraisal Review Board alleging that for the 1982 and 1983 tax years the board had set an excessive valuation on a separately assessed parcel of 646.-33 acres fronting on Lake Cherokee and containing 847 lakefront lots. The trial court set the fair market value of this land as follows: (1) January 1, 1982—$21,500,-000.00; and (2) January 1, 1983—$21,500,-000.00.

The property, whose valuation is in dispute for the years 1985 and 1986, consists of 2,842.77 acres located in both Gregg and Rusk Counties, including 815 of the lakefront lots previously discussed. In addition, Cherokee appealed the appraisal value of 55 acres of waterfront property on Lake Cherokee adjacent to the other lake lots that have not been divided into individual lots, another parcel of 595.03 acres of greenbelt, and a 1,587.8–acre tract located within Lake Cherokee.

Cherokee appealed the appraisal review board's order for the 1985 and 1986 tax years, alleging that the Gregg County Appraisal District made an excessive valuation of the 2,842.77 acres. The trial court set the fair market value of the land as follows: (1) January 1, 1985—$23,500,-000.00; and (2) January 1, 1986—$24,500,-000.00.

■ In its second point, Cherokee maintains that the appraisal report and testimony of James Norwood, Gregg County Appraisal District's valuation witness, should have been excluded because Norwood "did not consider the encumbrances or individual characteristics of Cherokee Water Company's property."

Cherokee cites Tax Code § 23.01(b) requiring property to be appraised "by the application techniques" and "based upon the individual characteristics that affect the market value." Cherokee argues the appraisal instructions given Norwood by the appraisal district prevented a proper appraisal of the subject property. These "contingent and limiting conditions" were as follows:

(1) The property is [to be] appraised as though free and clear of all encumbrances.

(2) The property is appraised on the basis of Fee Simple Title conveyance to purchaser.

(3) The property is being considered vacant with existing access and utilities.

In Cherokee's view the property is not free of encumbrances, but subject in its entirety to the water sales contract while each of the individual lots are encumbered by lease of perhaps perpetual duration to one of the 1500 Cherokee stockholders. Cherokee argues that it lacks the ability to convey an unencumbered full fee simple title to the property so long as the water sales contract and the lot leases are in effect. The lake front lots are not vacant, but most have already been extensively improved by the lessee-stockholders who, under the lease agreement, retain title to the improvements. The leasehold estates of the lessee-stockholders are encumbered by liens in favor of various local lenders who financed the improvements. Cherokee's policy has been to sell no land and it has interpreted the water sales agreement as requiring it to retain the entire tract.

Most of the large lakes built in Texas were built as municipal reservoirs and are subject to water sales contracts. The appraisal district argues and we agree that there is nothing in the water sales contract between Longview and Cherokee Water

constituting a substantial or significant encumbrance affecting the market value of the subject property. The requirements the contract imposes on Cherokee Water do not interfere with the development of the lakeshore envisioned by Mr. Norwood in his appraisal. Cherokee Water has the right under the lease agreement to annually increase or decrease the fee or rental paid by the lessee-stockholders. Except in those rare instances when the fee is tax exempt, real property subject to a lease is valued and taxed entirely to the owner of the fee simple title. *Daugherty v. Thompson,* 71 Tex. 192, 9 S.W. 99, 101 (1888); *Martin v. City of Mesquite,* 590 S.W.2d 793, 798 (Tex. Civ.App.—Dallas 1979, writ ref'd n.r.e.). Although it is clear that under our law the existence of a lease providing for a below market rental, even for an extended term, cannot be allowed to reduce the taxable value of the fee to that justified by the low rent, we can foresee a situation in which a lease of sufficient duration might, like an easement or restrictive covenant, prevent the highest use to which the property might otherwise be devoted. The effect on taxable value would not proceed from a consideration of the below market rental but from the lease's burden as a restriction on use. Cherokee's leases to its stockholders are not such a burden. Although the subdivision plan is not recorded at the courthouse, the leaseholds have been regularly traded for forty years with reference to the plat of the lake lots kept in the company office. Cherokee may adjust the annual fee or rental each year. Any increase in the taxes may be passed onto the lessee almost immediately.

The peculiar circumstances affecting the subject property make it difficult to appraise by any orthodox appraisal method. The property is already subdivided and improved, but the taxpayer does not own the improvements. Mr. Norwood appraised the property as he was instructed, that is as vacant land. Cherokee complains in its argument that the property is not vacant but, on the contrary, well improved by the lessee-stockholders. The circumstances of the case are too peculiar to easily admit an orthodox solution. But if the property must be valued separately from the improvements, appraising it as if it were vacant is at least one way of arriving at its taxable value.

On cross-examination Cherokee's counsel fully explored the assumptions and methods which underlay Norwood's opinion. The court did not err in admitting the appraisal report or testimony. Cherokee's second point is overruled.

■ In its third point, Cherokee claims the trial court erred in admitting Norwood's appraisal and testimony "because they were based on the hypothetical development and sale of Cherokee's ... as individual lots." Norwood found the highest and best use of the subject property was as a "single family residential development of ... lakefront lots...." In arriving at the market value of the subject property Norwood employed the "developers' absorption method" of the income approach to valuation. The property is hypothetically subdivided, the sale price of each lot is calculated based on sales of comparable lots, an absorption rate is hypothesized expressed in the number of years it will theoretically take the market to absorb all of the lots. Expenses are deducted and the projected income from lot sales discounted at a rate which ostensibly takes into account the money market and the developer's return.

Cherokee apparently concedes the validity of developer's absorption method but objects to its application to the subject tract because it is not vacant nor ready for development but already developed.

In *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808, 814 (1954), the Texas Supreme Court set forth a test for the admission of testimony regarding the value of land for uses other than its use at the time of taking in condemnation:

(1) That the property is adaptable to the other use.

(2) That the other use is reasonable and probable within the immediate future, or a reasonable time.

(3) That the market value has been enhanced thereby.

Cherokee argues that the appraisal district did not and could not have made such a showing prior to Norwood's testimony.

The subject property is already a subdivision, but one in which the lots are leased to and have been improved by the stockholders. The lots have access to water and electricity and each fronts on a paved or oiled road. The lessor Cherokee, the lessee stockholders in Cherokee, and even the taxing authorities have agreed to treat the improvements as personalty. If an already effectively subdivided property must be appraised excluding the value of the improvements, it seems eminently sensible to appraise the tract as a vacant subdivision ready for development. Cherokee's third point of error is overruled.

■ In its fourth point, Cherokee contends that the trial court erred in admitting Haywood's report and testimony "because they were based upon sales data which were not comparable" to Cherokee's property.

Real estate appraisal methods are generally characterized as (1) market data (comparable sales approach), (2) income (capitalization of income), or (3) replacement cost (replacement cost less depreciation). Norwood used the "developer's absorption method," something of a hybrid method which, although it capitalizes and then discounts income to be received from lot sales, relies heavily on comparable sales to demonstrate what those lot sales would be.

■ The question of the degree of similarity necessary to render testimony of sales of other property admissible in evidence rests largely in the discretion of the trial judge. *Hays v. State*, 342 S.W.2d 167 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r. e.). Greater latitude is allowed in admitting sales as a basis for an expert's opinion than as independent substantive evidence of market value. *Id.* The alleged weakness in the supporting facts or reasons

given by the expert for his opinion ordinarily goes to weight of the testimony, not its admissibility. *City of Houston v. Pillot*, 105 S.W.2d 870, 882 (Tex.Comm'n App. 1937, opinion adopted).

The challenged comparable sales were offered as part of the factual basis for Norwood's opinion. He also relied on other comparable sales both in arriving at his valuation of the lots as a component element of the developer's absorption method and in the valuation of the tract as a whole under the direct market data or comparable sales method. Assuming the challenged comparable sales were inadmissible, they were not the only supporting basis for Norwood's opinion. The foundation for Norwood's opinion was fully presented. He was extensively cross-examined as to both its factual and rational basis. The case was tried to the court and it is presumed that the trial judge disregarded all evidence that may have been improperly received. Cherokee's fourth point of error is overruled.

■ In its fifth point of error Cherokee contends the trial court erred in admitting Norwood's appraisal report and testimony because "they valued property which Cherokee did not own and which was not the subject of the lawsuit." Cherokee owns the fee simple estate in the entire property subject to the leaseholds of the lot owners. Cherokee apparently contends that, in making his appraisal, Norwood should have deducted the value of the leasehold estates of the stockholders from the value of the fee simple.

■ Except for a narrow exception in the case of real property exempt from taxation, the leasehold is not independently taxed under Texas law, but its value is subsumed within the value of the fee simple estate and taxed entirely to the owner of the fee. *Daugherty v. Thompson*, 71 Tex. 192, 9 S.W. 99, 101 (1888). If Cherokee's complaint is that Norwood appraised the subdivision as vacant whereas it is actually improved, we will reiterate that, in

the peculiar circumstances of this case in which the land must be valued separately from the improvements, it is reasonable to hypothesize, for the purpose of the appraisal, that the subdivision is vacant. Cherokee's point of error number five is overruled.

■ In its sixth point, Cherokee maintains Norwood's appraisal and testimony should not have been admitted because he based his opinion of the property's value on a use of the property "not reasonably probable within the immediate future or a reasonable time." Not surprisingly, Norwood determined that the highest and best use for that portion of the subject property already subdivided among 1500 stockholder lessees was as a lakefront residential subdivision—precisely the use to which the land was devoted. There has been active trading in the lot leaseholds for many years. Although no subdivision plat has been filed in the County Clerk's office, the lost leaseholds have been regularly sold by reference to a plat kept in Cherokee's office. The existence of the lot leaseholds is not the sort of encumbrance that will prevent the property from becoming a residential lakefront subdivision "in the near future or within a reasonable time." On the contrary, they demonstrate its suitability for that purpose. It is already a subdivision. Cherokee's sixth point is overruled.

■ In its seventh point of error, Cherokee urges that the trial court erred in admitting Norwood's testimony and appraisal report because he did not appraise Cherokee's property "as a single economic unit."

Cherokee appealed the decision of the Board of Equalization asking the District Court to fix the market value of 646 acres for the years 1982 and 1983, and 2842 acres for the years 1985 and 1986.

The subject property of this appeal is undeniably a part of the larger 7077–acre tract owned by Cherokee. Cherokee has always rendered the property for taxes as one unit, 7077 acres. However, the appraisal district apparently assessed the 7077 acres in several tracts or account numbers and at different values depending upon its physical character—water, flood plain, waterfront lots, etc. Cherokee challenged the valuation assessed on only those parcels described in its appeal to the District Court.

■ A property owner who lawfully renders his property is entitled to have his property assessed on the basis of his rendition as an entire tract, not upon the basis of parts or parcels severed out by the taxing authorities. *Electra I.S.D. v. Waggoner Estate*, 140 Tex. 483, 168 S.W.2d 645 (1943); *Bashara v. Saratoga I.S.D.*, 139 Tex. 532, 163 S.W.2d 631 (1942). The local government code impliedly recognizes that property owners have the right to have their contiguous acreage taxed as a unit. Tex.Loc. Gov't Code Ann. § 232.008 (Vernon 1988).

There is probably no more important, more misunderstood or perplexing problem in appraisal theory than that of the relationship between the value of an organic whole and the value of its parts. But it is recognized that the value of an entire tract is not necessarily the sum of the value of its component parts taken separately. Few parcels of land are uniformly valuable. Improvements, access, and general usefulness all vary within the same tract. If subdivided, the value of the component parts would differ radically. If a farm is valued as a unit, the farm house on a hill by the road imparts value to every acre of the farm, the marsh land in the creek bottom as well as the house site proper. Similarly the marsh diminishes the value of the whole place not just the land it occupies. Subdivided, the value of the components would differ radically. But if the farm is entitled to be taxed and therefore valued as a unit, the value of each acre or square foot of the whole is enhanced by the farmhouse, and each acre or square foot shares in the diminution in value because of the marsh and other less desirable parts of the tract.

Cherokee argues that it owns 7077 contiguous acres sharing a unity of use, and

that it is therefore entitled to have the property assessed as it was rendered—as one unit. Cherokee maintains that, for tax purposes, each acre of the 7077–acre tract has a value equal to the value of the tract as an entirety divided by 7077. In appellant's view, the appraisal district's assessment should be limited to the result of the per acre value multiplied by the number of acres whose valuation is disputed. Cherokee insists that Norwood arrived at an exaggerated value by considering the lakefront separately and not as part of the 7077–acre tract.

Norwood used the developer's absorption method of valuation to estimate what a developer would pay for the 646.33 acres suitable for use as a lakefront residential subdivision. The effect on value of its incorporation within a much larger tract, was apparently given little if any consideration.

There is merit in Cherokee's argument that, having rendered the entire tract for taxes as a unit, they were entitled to have it assessed as a unit, and not carved into several parcels separately assessed. However, for the years 1982 and 1983 Cherokee appealed the valuation of the 646–acre lakefront parcel only. Cherokee acquiesced in the valuation for 1982 and 1983 of the other parcels comprehending the balance of Cherokee's land within the jurisdiction of Gregg County Appraisal District. For the years 1985 and 1986 Cherokee appealed the valuation of separately assessed parcels totaling 2842 acres. No appeal was taken on the valuation of the balance of Cherokee's land assessed by the Gregg County Appraisal District.

■ If the taxpayer would preserve his right to contest the assessment of his property in several parcels relying on his right to have it assessed on the basis of its rendition as a single unit, he must challenge the assessment of all the parcels. Otherwise the taxpayer could accept the lower valuation placed on the less valuable components of the larger tract while only contesting the assessments of the more valuable parcels. Cherokee defined the subject property of the appeal as 646 acres for 1982 and 1983 and 2842 acres for the years 1985 and 1986. It was only upon this property described in its pleadings that Cherokee asked the District Court to fix the market value. This was the property Norwood appraised. Assuming that Cherokee was entitled to an assessment of the tract as a unit, we conclude Cherokee waived that right when it elected to appeal the assessments of only some of the component parcels into which the appraisal district had carved the larger tract. Cherokee's point of error number seven is overruled.

By its first point of error Cherokee asserts the trial court erred in admitting Norwood's appraisal report and opinion testimony "because they were not prepared in accordance with generally accepted appraisal techniques." We have rejected the arguments Cherokee advances in support of this point in addressing the other six points of error which urge error in the admission of Norwood's appraisal report and opinion testimony. The first point is overruled.

■ In points of error eight through eleven, Cherokee contends there is no evidence to support the trial court's findings of value for the years in question. In points sixteen through nineteen, Cherokee argues alternatively that the trial court's findings as to the taxable value of the property for the years in question were against the great weight and preponderance of the evidence.

In reviewing a no evidence point, we must consider only the evidence and inferences which tend to support the finding, and disregard all evidence and inferences to the contrary. *Jacobs v. Darby*, 750 S.W.2d 174, 175 (Tex.1988). In passing upon appellant's factual sufficiency or great weight points, we are required to consider and weigh all of the evidence and to set aside the finding only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In*

*re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Cherokee argues that only Norwood's report and opinion testimony support the trial court's findings of the taxable values of the subject property, that Norwood's report and testimony were improperly admitted, and therefore there is no evidence or insufficient evidence in the record to support the challenged findings. We believe the trial court properly admitted Norwood's appraisal report and opinion testimony for the reasons already set forth in addressing the points of error specifically dealing with Norwood's testimony. Most of Cherokee's objections may be dismissed as going to the weight of Norwood's testimony and not to its admissibility. Moreover, the case was tried by the court without a jury. Error, if any, in admitting some particulars of Norwood's evidence is harmless since it is presumed the trial judge disregarded evidence improperly received when there is other evidence on those points on which he might have relied. Measured against the appropriate standards of review, the competent evidence is both legally and factually sufficient to support the findings. Appellant's points eight through eleven and sixteen through nineteen are overruled.

 In its twelfth point of error, Cherokee claims "[t]he trial court erred because there was no evidence to support the finding and conclusion that the rental amount stated in the leases among Cherokee Water Company and its shareholders-lessees was not fair market value (or market rent)." Cherokee's twenty-third point contends that the evidence is insufficient to support such a finding.

The trial court made the challenged finding in response to Cherokee's request for additional findings. The finding is not responsive to a controlling or material issue in the case, it is not necessary to the adjudication of the controversy and may be disregarded as immaterial. *Spence v. Fenchler,* 107 Tex. 443, 180 S.W. 597 (1915). Moreover there is testimony in the record that the leases were not the result of an

arms-length transaction as would be the case with a market lease. One of Cherokee's witnesses acknowledged that the leases were adjusted annually, not in an effort to show a profit, but only to cover maintenance expenses. There is sufficient evidence both legally and factually from which the court could infer that the stockholder leases were not market leases. Points twelve and twenty-three are overruled.

 Cherokee's thirteenth point of error asserts the trial court erred "by failing to make a finding and conclusion as to the dollar amount attributable to the intangible value of the ownership of Cherokee Water Company's stock which the trial court took into account in determining the fair market value of Cherokee Water Company's property."

Norwood testified that sales of the leasehold lots were sales relevant to the determination of their value as vacant, unencumbered, freehold lots, the first step in the developer's absorption method of valuing the larger tract. Cherokee's thesis is that the sale of the leasehold carried with it the sale of the stock, and the Gregg County Appraisal District's appraisers failed to take this element into account or make any adjustment to market value on that basis.

In fact there was no testimony as to the stock's value. There was simply no evidence that would have served to support the finding requested by Cherokee. Gregg County Appraisal District's witnesses testified to other sales of comparable property that support their appraisal and on which the judge might have relied in deciding the values. The presumption obtains that he did not rely on evidence improperly admitted. Cherokee's thirteenth point is overruled.

In point of error fourteen appellant urges the trial court erred "in allowing Cherokee Water Company's motion for new trial to be overruled by operation of law." Cherokee does not argue the point or cite any authority. The matters urged in the

motion for new trial are much the same as those brought forward in his brief under other assignments of error. Appellant's fourteenth point of error is overruled.

In Cherokee's fifteenth point of error, it contends the trial court erred by admitting "evidence of sales of stock together with assignment of lessee's interest, as comparable sales data."

Cherokee does not attack Norwood's use of the developer's absorption method in his appraisal. However, the method depends on comparable sales data to determine the selling price of the lots. Cherokee complains that Norwood used sales of improved lots on other lakes as comparable to the lots on Lake Cherokee which were hypothetically unimproved. Norwood conceded that he also used sales of the leasehold lots on Lake Cherokee together with the accompanying share of stock in Cherokee Water Company.

 Sales of the leasehold lots that accompany ownership of stock in Cherokee Water Company are not comparable sales that may be used to appraise the value of the freehold interest in the lots. The ownership of stock in Cherokee Water Company carries with it not only the right to lease one of the lakefront lots, but also an indirect ownership interest in the entire 7077–acre tract and other corporate assets. The interests involved are not comparable and evidence of the leasehold sales should not have been admitted. It is also well settled that evidence of the sale price of improved lots is not admissible as a comparable sale to prove the value of unimproved lots. *City of Austin*, 153 Tex. 324, 267 S.W.2d at 808 (1954). However, Norwood's report also shows other genuinely comparable sales which he consulted in forming his opinion. Evidence of the objectionable sales data came into evidence as part of Norwood's appraisal report, most of which was unobjectionable. Cherokee's objection at trial was to the admission of the appraisal report in its entirety as well as to all of Norwood's testimony. Where objectionable evidence is separable from the unobjec-

tionable, an objection to evidence in its entirety ordinarily will be overruled where part of the evidence offered is admissible. *Speier v. Webster College*, 616 S.W.2d 617 (Tex.1981). Moreover it is presumed that in a bench trial, the judge did not consider evidence improperly admitted. Cherokee's fifteenth point of error is overruled.

 In point of error number twenty, Cherokee insists the trial court erred in rendering judgment increasing the appraised value of Cherokee Water Company's property as of January 1, 1982, to $21,500,000.00 from $14,641,965.00, the value as determined by the Gregg County Appraisal Review Board.

In determining the appeal, "the district court may (1) fix the appraised value of property in accordance with the requirements of law if the appraised value is at issue." Tex.Tax Code Ann. § 42.24(1) (Vernon 1982). If the court determines that the appraised value of the property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court. Tex.Tax Code Ann. § 42.25 (Vernon 1982). It is Cherokee's position that the district court may reduce the appraised value found by the appraisal review board, but it may not increase it.

 Review by the district court is by trial de novo. Evidence of prior actions or findings by the appraisal review board is not admissible. Tex.Tax Code Ann. § 42.23 (Vernon 1982). At trial the appraisal authorities may introduce evidence of value greater than the appraisal roll value being appealed, and the taxpayer may introduce evidence of value lower than the values used when the taxpayer rendered the property for taxes. *Hunt County Tax Appraisal District v. Rubbermaid, Inc.*, 719 S.W.2d 215 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

 The statutes do not specifically state that the district court, in deciding an

appeal from the appraisal review board's decision, may increase as well as decrease the appraised value found by the appraisal review board. There are no decided cases that answer the question. However, the legislature directs the district court to "fix the appraised value of property in accordance with the requirements of law" in a de novo trial. The review board's decision is not made known to the fact-finder and the review board is not bound or limited by that decision in the values it may prove at the trial of the appeal. Considering the entire statutory plan provided for judicial review of appraisal board orders, we believe the legislature intended no restriction on the district court's power to raise as well as lower the appraisal review board's order if justified by the evidence. Appellant's twentieth point is overruled.

■ Cherokee urges in its twenty-first point of error that the trial court erred "by finding and concluding that the long term water contract does not significantly impair the fair market value of the Cherokee Water Company's property." Cherokee has argued all along that it believed that, since its ownership of the entire 7077 acres is set out in the water sales contract, this imposes an obligation on Cherokee to maintain fee title to all the property during the fifty-year life of the contract. However, there is evidence that most of the major municipal reservoirs in Texas are surrounded by subdivisions. There is apparently nothing in the water sales contract that would require Cherokee to retain ownership of the lakefront property. Fee title to lots within a lakefront subdivision could be conveyed subject to the same rules and regulations presently affecting the 1500 leasehold lots into which the lakefront has long been subdivided. Cherokee's witness conceded that the use of the subject property as a residential subdivision is not inconsistent with Cherokee's obligations under the water supply contract. The twenty-first point is overruled.

■ In its twenty-second assignment of error, Cherokee contends the trial court erred "by finding and concluding that the lot leases do not substantially impair or seriously depreciate the fair market value as encumbrances on and to Cherokee Water Company's property." The purported difficulty presented by the peculiar leases has already been discussed. The leases are for one year renewable each year upon payment of an annual rental in such an amount as Cherokee may set each year. In the past, Cherokee has exercised understandable restraint in setting the rent to be paid by its own stockholders, limiting it to only enough to cover maintenance costs. But nothing requires that this must continue. The lakefront leaseholds already subdivide the property in the same way required by a subdivision of freehold lots. We cannot perceive them as an encumbrance substantially affecting the value of the subject property. The point of error is overruled.

■ In its twenty-fourth point of error, Cherokee complains that the trial court erred in not awarding attorneys' fees in the cause in which the trial judge *increased* the appraisal value from that determined by the appraisal review board. The Tax Code provides that the taxpayer who prevails in a suit challenging an excessive valuation may be awarded attorneys' fees. Cherokee did not prevail in cause number 82–2868–A, and is not entitled to attorneys' fees. The twenty-fourth point is overruled.

In its twenty-fifth and last point, Cherokee complains that the attorneys' fees awarded in the other three cases were inadequate because an excessive appraisal of fair market value was used in calculating (and diminishing) the reduction to which Cherokee was entitled. However, the trial court did not err in receiving the challenged appraisals into evidence. The trial court's award of attorneys' fees was correct. The point is overruled.

The judgment is affirmed.