In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00120-CV


______________________________




PANOLA COUNTY APPRAISAL DISTRICT AND


PANOLA COUNTY APPRAISAL REVIEW BOARD, Appellants


V.



PANOLA COUNTY FRESH WATER

SUPPLY DISTRICT NUMBER ONE, Appellee



 


On Appeal from the 123rd Judicial District Court


Panola County, Texas


Trial Court No. 1998-A-135




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 The Panola County Appraisal District and Panola County Appraisal Review Board (Appraisal
District) appeal the judgment of the trial court in favor of the Panola County Fresh Water Supply
District Number One (Water District). The Water District brought suit seeking a re-evaluation of
the leasehold interests on the lots owned by it and bordering on Lake Murvaul.

 The Appraisal District contends (1) that the trial court lacked jurisdiction because the Water
District is not the owner of the property involved; (2) that the evidence was insufficient to support
the court's findings and the results based on these findings; and (3) that the court erred in awarding
attorney's fees to the Water District. 

 The Water District is a tax-exempt political subdivision that owns 4,000 acres with between
450 and 470 lots surrounding Lake Murvaul in Panola County, Texas. The Water District leases
these lots to individuals. These leases run from one year to ninety-nine years. Some of the lots are
vacant; some of the lots have homes; and some of the lots have trailers. The testimony indicated that
at the time of the action, all lots had been leased. We do not address the matter of improvements,
if any, on the property because this is not raised in the pleadings, proof, or contentions. 

 Because all or nearly all of the lots around the lake are already leased, there is considerable
demand for these leasehold interests, and from thirty to fifty transfers a year are made by lessees
assigning their lease to others. Because of the demand, the transferor is able to demand considerable
compensation from the transferee for such transfers, and the transferee also assumes the
responsibility to pay the contract rent to the Water District. The Water District routinely approves
these transfers. The consideration paid for such transfers, constitutes additional consideration paid
for the use of that property for the remainder of the lease and is in effect an additional amount of
money paid for the leasehold interest.

 The Appraisal District assigned taxable values to the leasehold estates on the lots the Water
District owned, but leased to individuals. The Water District protested these valuations on the
ground that the Appraisal District improperly valued the leasehold estates by including the Water
District's reversionary fee-simple interest in its calculation of market value. The Appraisal Review
Board upheld the appraisals. The Water District then brought suit and obtained a judgment in the
district court ordering the Appraisal District to revalue the leasehold estates at their market value,
to be determined by the equity method specifically based solely on the rent paid on each lot.

 The provisions of the Texas Property Tax Code for the adjudication of protests authorized
by the Code are exclusive. See Tex. Tax Code Ann. § 42.09(a) (Vernon 1992). "A property owner
is entitled to protest before the appraisal review board . . . [an] unequal appraisal of the owner's
property, . . . [and] any other action of the chief appraiser, appraisal district, or appraisal review
board that applies to and adversely affects the property owner." Tex. Tax Code Ann. § 41.41
(Vernon Supp. 2002). If the protest is unsuccessful, the property owner may then seek judicial
review of the appraisal review board's order. Tex. Tax Code Ann. § 42.01 (Vernon Supp. 2002). 


Jurisdiction

 The Appraisal District's jurisdictional argument is that the Water District has no standing
to seek judicial review of the valuations because it is not "a property owner" subject to taxation
within the meaning of the Property Tax Code. Generally, only a property owner may protest before
the appraisal review board and sue in court for relief: Tex. Tax Code Ann. § 42.01 (standing to
sue), § 42.21 (Vernon Supp. 2002) (pleadings), § 42.25 (Vernon 1992), and § 42.26 (Vernon Supp.
2002) (relief authorized), all require that the plaintiff be the property owner in order to sue or obtain
relief in a tax appeal. Gregg County Appraisal Dist. v. Laidlaw Waste Sys., Inc., 907 S.W.2d 12, 16
(Tex. App.-Tyler 1995, writ denied) (citing Plaza Equity Partners v. Dallas Cent. Appraisal Dist.,
765 S.W.2d 520 (Tex. App.-Dallas 1989, no writ)). The property owner and the chief appraiser are
the only parties with standing to appeal from an appraisal review board's order determining a
taxpayer protest. Gregg County Appraisal Dist., 907 S.W.2d at 16; Plaza Equity Partners, 765
S.W.2d at 521 (citing Tex. Tax Code Ann. §§ 42.01, 42.02 (Vernon Supp. 2002)). 

 The Property Tax Code does not define "property owner." We will give it its generally
accepted meaning as one who claims an interest in property. The statutes do not refer to the owner
of the property taxed, but to the owner of property to which the Appraisal District has applied an
appraised value. See Tex. Tax Code Ann. §§ 42.25, 42.26.

 Generally speaking, the property owner referred to in the Property Tax Code would refer to
the owner whose property was being appraised and taxed. The only taxable property in this case and
the property owner being taxed under the Texas Property Tax Code would be the owner of the
leasehold interest. The Water District does not contend that it owns a property interest in the
leaseholds, but it contends that the Appraisal District's appraisal methodology improperly included
the value of its right to reversion, and in effect it is being taxed. It further offered evidence that
comparables, including fee-simple absolutes, were used in determining the value of the property. 
Such comparables would necessarily include the reversionary interest. It further offered evidence
that the Appraisal District had sent tax notices in the name of the Water District and attempted to
place a tax lien on the Water District. These allegations and this evidence constitute sufficient bases
for the Water District to have standing to seek a judicial review of the appraisals. If the appraisals
included the reversionary interest in the evaluation of the property, this would constitute an inclusion
of property belonging to the Water District, and as owner of this property, the Water District had a
right to seek relief because the reversionary interest was not subject to taxation or tax liens.

 A leasehold, which is the possessory interest (1) in real property in which the owner of the fee
simple is exempt from taxation, is appraised at market value (2) of the leasehold. Tex. Tax Code Ann.
§ 23.13 (Vernon 1992). The Property Tax Code provides, however, that the appraised value of a
leasehold may not be less than the total rent paid for the interest for the current year. Id. This is a
minimum appraised value, but does not limit the property from being taxed at a greater amount if
such an amount is justified by the appraised market value. 

 The Water District endeavors to support its standing as fee-simple owner to complain about
the tax appraisal because, as stated in its brief, the appraisal resulted in taxation on tax-exempt
property, stating that it was subjected to taxation, paid taxes, and undisputably was adversely
affected. Exhibits were attached showing that the county had attempted to put liens on the exempt
lake lots, given notice of the liens to the Panola County Fresh Water District, had billed it, and it had
written checks in payment of the taxes. The chairman of the Panola County Fresh Water District
testified as follows:

 Q. What is the interest in the Water District in the taxable value of the
leaseholds? What interest do you have?


 A. Well, if the people don't pay the taxes, then we inherit and they give
the lot back. We inherit the tax with it. We're having to pay it.


 . . . .


 Q. Go ahead.


 A. There have been several people that have, you know, mentioned to me
or contacted me that, you know, possibly that they might would sue us because they
leased the lot with anticipation that there would be no taxes. That's the way it's been
for 40 years. And so, you know, we don't want to inherit any.

 A tax-exempt entity cannot be taxed; neither can a tax lien be placed on its interest in
property. If this had been the sole purpose of the judgment below or this appeal, then this opinion
would end here, giving the Water District this relief. However, this was not the relief granted by the
trial court's judgment. The judgment is limited to fixing the value for the leasehold property and
requiring a correction of the tax rolls on the leasehold property. (3)

 The record indicates that the property being taxed and the property subject to taxation was
the leasehold interest. A leasehold interest is an ownership right in land that belongs to the lessee. 
Its evaluation and taxation is a matter about which the lessee can complain and seek relief. The
lessor, being the Water District, has no standing in this matter and no jurisdiction to complain about
the tax appraisals of the interests of the individual lessees, except to the extent that it can show the
general method used for appraising the property allegedly includes its reversionary interest and that
as a tax-exempt entity, it is being illegally taxed.

 We conclude that the Water District has alleged a sufficient interest in the method of
appraisal of the property and, based on the attempts to hold the Water District liable for ad valorem
taxes on the property, it has standing to litigate this matter.

Applicable Law

 Section 23.13 of the Property Tax Code specifically addresses taxable leasehold, which is
the taxing interest in this case. This provision states as follows:

 A taxable leasehold or other possessory interest in real property that is exempt
from taxation to the owner of the estate or interest encumbered by the possessory
interest is appraised at the market value of the leasehold or other possessory interest. 
However, the appraised value may not be less than the total rental paid for the
interest for the current tax year.


Tex. Tax Code Ann. § 23.13.


 The Property Tax Code does not prohibit use of comparables to value the leasehold interest,
but true comparables would be derived from sales of leasehold interests, not from sales of fee-simple
interests. The Property Tax Code does not prohibit a methodology which involves capitalization,
as long as that capitalization involves only the leasehold interest. In so doing, it does not affect the
reversionary interest. (4)

 Section 1.04 of the Texas Property Tax Code further defines "market value" as: 

 [T]he price at which a property would transfer for cash or its equivalent under
prevailing market conditions if:


 (A) exposed for sale in the open market with a reasonable time for the
seller to find a purchaser;


 (B) both the seller and the purchaser know of all the uses and purposes to
which the property is adapted and for which it is capable of being used and of the
enforceable restrictions on its use; and




 (C) both the seller and purchaser seek to maximize their gains and neither
is in a position to take advantage of the exigencies of the other.


Tex. Tax Code Ann. § 1.04 (Vernon Supp. 2002).


 The chairman of the Water District explained the lease assignments this way:

 I don't think that the right to assign a lease is -- that's -- you're not given a deed. 
You're just, you know, somebody's got something that you want and you're willing
to pay a price to get the right to lease. I don't think that's -- you know, that's not
appraisal theory leasehold interest.


 An expert for the Appraisal District who was hired to investigate the market on lots at Lake
Murvaul testified as follows: "Well, if you're going to buy -- if you're going to try to buy a leasehold
interest out there, you have to pay the leasehold price plus the contract rent."

 An ownership interest in a leasehold is the legal right to possess that property for a set period
of time (for the purpose of the Texas Property Tax Code, at least one year). The ownership of that
right in this case has a measurable fair market value because there are people who are willing to
purchase and do purchase that right to possess the property under the terms of the lease. 
Furthermore, the assignee of the leasehold may in turn convey his or her ownership right to another
person and obtain the fair market value existing at that time. It is this fair market value that is
taxable under the circumstances of this case. If the underlying fee simple were taxable, then the
leasehold estate would be subsumed in the fee-simple estate. However, in the present case, the fee
simple is owned by the Water District; therefore, because the Water District is not subject to
taxation, the leasehold interest is.

 In Tarrant Appraisal Dist. v. Am. Airlines, Inc., 826 S.W.2d 767 (Tex. App.-Fort Worth
1992, writ denied), the court cited the case of Cherokee Water Co. v. Gregg County Appraisal Dist.,
773 S.W.2d 949 (Tex. App.-Tyler 1989), aff'd, 801 S.W.2d 872 (Tex. 1990). It is not comparable
to the present case because the Cherokee Water Company was not a tax-exempt entity, but was the
party being taxed in that case. The court draws from this case the fact that the leasehold value is
subsumed within the value of the fee-simple estate, but this is only true when the fee-simple estate
is taxable, which it is not in the present case. The only time that the leasehold value is not subsumed
within the value of the fee-simple estate and due from the owner of the fee-simple estate is when the
fee-simple estate is exempt from taxation. In that situation only, the Property Tax Code specifically
provides that the leasehold interest is taxable to the lessee. 

 The court in Tarrant Appraisal Dist. also cites the Cherokee Water Co. case for the
proposition that "[t]he possessory interest method, by capitalizing the rent remaining for the duration
of the lease, is charging the taxable lessee with a tax-exempt lessor's property value." Tarrant
Appraisal Dist., 826 S.W.2d at 771 (citing Cherokee Water Co., 773 S.W.2d at 955). This creates
confusion as to what is being addressed in the Cherokee Water Co. case. In the Cherokee Water Co.
case, the capitalization of income referred to monies received by the lessor, because it is the lessor
(Cherokee Water Company, not a tax-exempt entity) being taxed in that case. In the present case,
the lessor is not being taxed, and the lessees who are being taxed do not receive rental income from
the property.

 The trial court's attempt to limit the appraised value to the rent being paid by the lessees is
a clear violation of the Texas Property Tax Code, which permits a leasehold interest to be valued at
a fair market value. Although, the amount of the lease at the time it is made is a factor to be
considered in measuring the value of leasehold interests, the leasehold interests can increase in value,
as other real estate interests, and the price that a willing buyer is willing to pay a willing seller for
the leasehold interest can be considered in the evaluation. The market value as established by Tex.
Tax Code Ann. § 23.01(a) (Vernon Supp. 2002) may be used in the formula calculating the value
of the leasehold interest.

 The Texas Property Tax Code does not specify the methodology to be used in calculating the
fair market value, but it does require a methodology which will determine the fair market value of
the interest being appraised. 

 Two principles set forth in the Property Tax Code are: (1) all property subject to ad valorem
taxes must be evaluated at a fair market value; and (2) this is to be a current value established on
January 1 of each year. Tex. Tax Code Ann. § 23.01 (Vernon Supp. 2002). Thus, the judgment
of the trial court violates both of these principles and their broad scope because it limits the value,
not to the fair market value at the time of the taxation, but to a time the leasehold rental was fixed
by a contract, which may have been established twenty years, for example, prior to the evaluation
for tax purposes, and it denies the taxing entity the right to have an appraisal based on the current
market value.


Review on Findings of Fact

 The trial court's findings of fact are reviewable for legal and factual sufficiency of the
evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. 
Zieben v. Platt, 786 S.W.2d 797, 799 (Tex. App.-Houston [14th Dist.] 1990, no writ). When
deciding a no-evidence point, in determining whether there is no evidence of probative force to
support a factual finding, we must consider all of the evidence in the record in the light most
favorable to the party in whose favor the verdict has been rendered, and we must apply every
reasonable inference that could be made from the evidence in that party's favor. Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence point will be sustained
when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law
or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively
establishes the opposite of the vital fact.  Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328,
334 (Tex. 1998).

 If we find some evidence of probative value, we test the factual sufficiency of that evidence
by examining the entire record to determine whether the finding is clearly wrong and unjust. 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).



 The findings of fact made by the trial court that are relevant to this appeal are the following:

  On July 23, 1998, the Panola County Appraisal Review Board placed a value on the
Water District's property which used the wrong methodology and placed unequal appraisals on the
property owned by the Water District.

  The methodology employed by defendants attempted to charge the taxable lessee with
the tax-exempt lessor's property value.

  The methodology employed by defendants sought to include within the taxable value
the right to reversion, which belongs to and was retained by the Water District and thereby
improperly sought to tax a tax-exempt interest.

 The appraiser for the Appraisal District testified as follows:

 Q. (By Mr. Anderson) You said you took a look at some deed
transactions where fee simple interests were conveyed, did you not?


 A. I think about three or four out of the 28 were, yes.


 . . . .


 Q. In your attempts to respond to this lawsuit and also in trying to come
up with fair and equitable market values that are equal and uniform, have you looked
at the differences between sales of fee interest versus leasehold interest?


 A. Yes, I have.


 Q. Have you found that there's any significant difference in the sale --
sales price, the market value, between leasehold interest and fee interest?


 A. No, sir. No discernible difference.


 . . . .


 Q. And you did that [referring to a list of comparables] both for the lease
lots and for the fee simple lots?


 A. Yes.


 . . . .


 Q. (By Mr. Anderson) I'm talking specifically about the deeded lot sales
right now, sir.

 When you say down at the bottom "sample group of deeded
lot sales," are those fee simple conveyances, sir?


 A. Yes.


 There are some places in this testimony that suggest possible confusion about the
terminology, specifically the meaning of fee simple. However, there was ample evidence for the trial
court as trier of fact to have determined from the testimony that some fee-simple interests were used
as comparables for the purpose of establishing a fair market value of leasehold interests. The key
question in looking at the methodology is this: Does it attempt to appraise property which includes
the reversionary interest and not belonging to the leasehold owner and not based on the fair market
value of the leasehold? We find no evidence to show that there was any attempt to tax a reversionary
interest, other than using erroneous comparables, as mentioned above. When the leasehold
terminates, the leasehold owner, who is also the taxpayer, has no further interest in the property, and
no tax lien can be placed on the reversionary interest. The taxing of the leasehold interest does not
violate the Texas Property Tax Code.

 To the extent that the Appraisal District applied a method which included in the comparables
some fee-simple absolute values, which are not comparable to comparisons of leasehold estates, the
trial court correctly found the methodology to be in error; however, on remand, the trial court should
require a re-evaluation only to remove such comparables. The Appraisal District contends this was
harmless error, because these comparables were approximately the same as the other comparables
used; however, other than a general statement in the testimony, we found no other testimony to
explain this with specificity. Furthermore, the possibility that erroneous comparables were used
requires that this matter be reconsidered and these erroneous comparables removed from the formula
establishing the fair market value.

 We find that the evidence is legally and factually sufficient to support the trial court's use of
the wrong methodology by the Appraisal District in its use of fee-simple ownerships as comparable
to the lessees' ownership interests.

Review on Conclusions of Law

 The Appraisal District also complains about the conclusions of law made by the trial court. 
We review conclusions of law de novo and uphold them if they may be sustained on any legal theory
supported by the evidence. 

 The relevant conclusion of law is the following: Pursuant to Section 23.13, Texas Property
Tax Code, the appraised value for each leasehold in question is the rent being paid by the lessees to
the Water District for the tax year 1998 and subsequent tax years.

 As previously discussed, a leasehold interest is an ownership in property. It is subject to
taxation in accordance with this fair market value. The fair market value of a leasehold tends to
diminish each year as the time on the lease also diminishes, but based on the demand of the market
and the economics involved, the value of the ownership of the leasehold could increase. The trial
court erred in limiting the value of the leasehold interest to the contract rental price on each lot,
which in effect excludes the true market value for the purchase of the assignment of the remaining
years that the leasehold interest may run. 

 We find that the trial court erred in reaching a conclusion of law that the appraised value for
each leasehold in question would be the rental paid by the lessees to the Water District.

 On remand, the trial court should require all comparables of fee-simple interests to be
eliminated from the data used in establishing the fair market value of the leaseholds, but it should
not limit the appraisal to the amount of annual rent being paid on the property.

 The cause is reversed and remanded to the trial court for a new trial in accordance with this
opinion.



 Ben Z. Grant

 Justice


Date Submitted: September 20, 2001

Date Decided: January 31, 2002


Publish
1. See Tex. Tax Code Ann. § 1.04(16) (Vernon Supp. 2002).
2. The terms market value, fair market value, cash market value, and fair cash market value,
are synonymous. W. Texas Hotel Co. v. City of El Paso, 83 S.W.2d 772, 776 (Tex. Civ. App.-El
Paso 1935, writ dism'd). 
3. In the judgment in this case, the trial court included the following: "It is hereby ORDERED,
ADJUDGED AND DECREED that the value for each leasehold in question is hereby fixed at the
rental being paid by the lessees to Plaintiff for the tax year of 1998 and subsequent tax years."
4. Tex. Tax Code Ann. § 23.13 (Vernon 1992) clearly identifies a taxable leasehold as one
of the types of possessory interest. "Possessory interest" is defined by Section 1.04(16) of the
Property Tax Code to mean "an interest that exists as a result of possession or exclusive use or a
right to possession or exclusive use of a property and that is unaccompanied by ownership of a fee
simple or life estate in the property." Tex. Tax Code Ann. § 1.04(16) (Vernon Supp. 2002). 
However, "possessory interest" does not include an interest, whether of limited or indeterminate
duration, that involves a right to exhaust a portion of a real property.