PANOLA COUNTY APPRAISAL DISTRICT and Panola County Appraisal Review Board, Appellants,

v.

PANOLA COUNTY FRESH WATER SUPPLY DISTRICT NUMBER ONE, Appellee,

No. 06–00–00120–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 20, 2001.

Decided Jan. 31, 2002.

Doug W. Ray, Dylan Wood, Ray, Wood & Bonilla, LLP, Austin, for appellant.

Roger W. Anderson, Gillen, Yarbrough & Anderson, PC, Tyler, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

The Panola County Appraisal District and Panola County Appraisal Review Board (Appraisal District) appeal the judgment of the trial court in favor of the Panola County Fresh Water Supply District Number One (Water District). The Water District brought suit seeking a re-evaluation of the leasehold interests on the lots owned by it and bordering on Lake Murvaul.

The Appraisal District contends (1) that the trial court lacked jurisdiction because the Water District is not the owner of the property involved; (2) that the evidence was insufficient to support the court's findings and the results based on these findings; and (3) that the court erred in awarding attorney's fees to the Water District.

The Water District is a tax-exempt political subdivision that owns 4,000 acres with between 450 and 470 lots surrounding Lake Murvaul in Panola County, Texas. The Water District leases these lots to individuals. These leases run from one year to ninety-nine years. Some of the lots are vacant; some of the lots have homes; and some of the lots have trailers. The testimony indicated that at the time of the action, all lots had been leased. We do not address the matter of improvements, if any, on the property because this is not raised in the pleadings, proof, or contentions.

Because all or nearly all of the lots around the lake are already leased, there is considerable demand for these leasehold interests, and from thirty to fifty transfers a year are made by lessees assigning their lease to others. Because of the demand,

the transferor is able to demand considerable compensation from the transferee for such transfers, and the transferee also assumes the responsibility to pay the contract rent to the Water District. The Water District routinely approves these transfers. The consideration paid for such transfers, constitutes additional consideration paid for the use of that property for the remainder of the lease and is in effect an additional amount of money paid for the leasehold interest.

The Appraisal District assigned taxable values to the leasehold estates on the lots the Water District owned, but leased to individuals. The Water District protested these valuations on the ground that the Appraisal District improperly valued the leasehold estates by including the Water District's reversionary fee-simple interest in its calculation of market value. The Appraisal Review Board upheld the appraisals. The Water District then brought suit and obtained a judgment in the district court ordering the Appraisal District to revalue the leasehold estates at their market value, to be determined by the equity method specifically based solely on the rent paid on each lot.

The provisions of the Texas Property Tax Code for the adjudication of protests authorized by the Code are exclusive. *See* TEX. TAX CODE ANN. § 42.09(a) (Vernon 1992). "A property owner is entitled to protest before the appraisal review board . . . [an] unequal appraisal of the owner's property, . . . [and] any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." TEX. TAX CODE ANN. § 41.41 (Vernon Supp. 2002). If the protest is unsuccessful, the property owner may then seek judicial review of the appraisal review board's order. TEX. TAX CODE ANN. § 42.01 (Vernon Supp. 2002).

## Jurisdiction

 The Appraisal District's jurisdictional argument is that the Water District has no standing to seek judicial review of the valuations because it is not "a property owner" subject to taxation within the meaning of the Property Tax Code. Generally, only a property owner may protest before the appraisal review board and sue in court for relief: TEX. TAX CODE ANN. § 42.01 (standing to sue), § 42.21 (Vernon Supp.2002) (pleadings), § 42.25 (Vernon 1992), and § 42.26 (Vernon Supp.2002) (relief authorized), all require that the plaintiff be the property owner in order to sue or obtain relief in a tax appeal. *Gregg County Appraisal Dist. v. Laidlaw Waste Sys., Inc.*, 907 S.W.2d 12, 16 (Tex.App.-Tyler 1995, writ denied) (citing *Plaza Equity Partners v. Dallas Cent. Appraisal Dist.*, 765 S.W.2d 520 (Tex.App.-Dallas 1989, no writ)). The property owner and the chief appraiser are the only parties with standing to appeal from an appraisal review board's order determining a taxpayer protest. *Gregg County Appraisal Dist.*, 907 S.W.2d at 16; *Plaza Equity Partners*, 765 S.W.2d at 521 (citing TEX. TAX CODE ANN. §§ 42.01, 42.02 (Vernon Supp.2002)).

The Property Tax Code does not define "property owner." We will give it its generally accepted meaning as one who claims an interest in property. The statutes do not refer to the owner of the property *taxed*, but to the owner of property to which the Appraisal District has applied an *appraised value*. *See* TEX. TAX CODE ANN. §§ 42.25, 42.26.

Generally speaking, the property owner referred to in the Property Tax Code would refer to the owner whose property was being appraised and taxed. The only taxable property in this case and the property owner being taxed under the Texas

Property Tax Code would be the owner of the leasehold interest. The Water District does not contend that it owns a property interest in the leaseholds, but it contends that the Appraisal District's appraisal methodology improperly included the value of its right to reversion, and in effect it is being taxed. It further offered evidence that comparables, including fee-simple absolutes, were used in determining the value of the property. Such comparables would necessarily include the reversionary interest. It further offered evidence that the Appraisal District had sent tax notices in the name of the Water District and attempted to place a tax lien on the Water District. These allegations and this evidence constitute sufficient bases for the Water District to have standing to seek a judicial review of the appraisals. If the appraisals included the reversionary interest in the evaluation of the property, this would constitute an inclusion of property belonging to the Water District, and as owner of this property, the Water District had a right to seek relief because the reversionary interest was not subject to taxation or tax liens.

A leasehold, which is the possessory interest [1] in real property in which the owner of the fee simple is exempt from taxation, is appraised *at market value*[2] *of the leasehold.* TEX. TAX CODE ANN. § 23.13 (Vernon 1992). The Property Tax Code provides, however, that the appraised value of a leasehold may not be less than the total rent paid for the interest for the current year. *Id.* This is a minimum appraised value, but does not limit the property from being taxed at a greater amount if such an amount is justified by the appraised market value.

The Water District endeavors to support its standing as fee-simple owner to complain about the tax appraisal because, as stated in its brief, the appraisal resulted in taxation on tax-exempt property, stating that it was subjected to taxation, paid taxes, and undisputably was adversely affected. Exhibits were attached showing that the county had attempted to put liens on the exempt lake lots, given notice of the liens to the Panola County Fresh Water District, had billed it, and it had written checks in payment of the taxes. The chairman of the Panola County Fresh Water District testified as follows:

Q. What is the interest in the Water District in the taxable value of the leaseholds? What interest do you have?

A. Well, if the people don't pay the taxes, then we inherit and they give the lot back. We inherit the tax with it. We're having to pay it.

. . . .

Q. Go ahead.

A. There have been several people that have, you know, mentioned to me or contacted me that, you know, possibly that they might would sue us because they leased the lot with anticipation that there would be no taxes. That's the way it's been for 40 years. And so, you know, we don't want to inherit any.

■ A tax-exempt entity cannot be taxed; neither can a tax lien be placed on its interest in property. If this had been the sole purpose of the judgment below or this appeal, then this opinion would end here, giving the Water District this relief. However, this was not the relief granted by the trial court's judgment. The judg-

---

**1.** *See* TEX. TAX CODE ANN. § 1.04(16) (Vernon Supp.2002).

**2.** The terms *market value, fair market value, cash market value,* and *fair cash market value,* are synonymous. *W. Texas Hotel Co. v. City of El Paso,* 83 S.W.2d 772, 776 (Tex.Civ.App.-El Paso 1935, writ dism'd).

ment is limited to fixing the value for the leasehold property and requiring a correction of the tax rolls on the leasehold property.[3]

The record indicates that the property being taxed and the property subject to taxation was the leasehold interest. A leasehold interest is an ownership right in land that belongs to the lessee. Its evaluation and taxation is a matter about which the lessee can complain and seek relief. The lessor, being the Water District, has no standing in this matter and no jurisdiction to complain about the tax appraisals of the interests of the individual lessees, except to the extent that it can show the general method used for appraising the property allegedly includes its reversionary interest and that as a tax-exempt entity, it is being illegally taxed.

We conclude that the Water District has alleged a sufficient interest in the method of appraisal of the property and, based on the attempts to hold the Water District liable for ad valorem taxes on the property, it has standing to litigate this matter.

### Applicable Law

Section 23.13 of the Property Tax Code specifically addresses taxable leasehold, which is the taxing interest in this case. This provision states as follows:

A taxable leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or interest encumbered by the possessory interest is appraised at the market value of the leasehold or other possessory interest. However, the appraised value may not be less than the total rental paid for the interest for the current tax year.

TEX. TAX CODE ANN. § 23.13.

The Property Tax Code does not prohibit use of comparables to value the leasehold interest, but true comparables would be derived from sales of leasehold interests, not from sales of fee-simple interests. The Property Tax Code does not prohibit a methodology which involves capitalization, as long as that capitalization involves only the leasehold interest. In so doing, it does not affect the reversionary interest.[4]

Section 1.04 of the Texas Property Tax Code further defines "market value" as:

[T]he price at which a property would transfer for cash or its equivalent under prevailing market conditions if:

(A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;

(B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

(C) both the seller and purchaser seek to maximize their gains and neither

---

3. In the judgment in this case, the trial court included the following: "It is hereby ORDERED, ADJUDGED AND DECREED that the value for each leasehold in question is hereby fixed at the rental being paid by the lessees to Plaintiff for the tax year of 1998 and subsequent tax years."

4. TEX. TAX CODE ANN. § 23.13 (Vernon 1992) clearly identifies a taxable leasehold as one of the types of possessory interest. "Possessory interest" is defined by Section 1.04(16) of the

Property Tax Code to mean "an interest that exists as a result of possession or exclusive use or a right to possession or exclusive use of a property and that is unaccompanied by ownership of a fee simple or life estate in the property." TEX. TAX CODE ANN. § 1.04(16) (Vernon Supp.2002). However, "possessory interest" does not include an interest, whether of limited or indeterminate duration, that involves a right to exhaust a portion of a real property.

is in a position to take advantage of the exigencies of the other.

TEX. TAX CODE ANN. § 1.04 (Vernon Supp. 2002).

The chairman of the Water District explained the lease assignments this way:

I don't think that the right to assign a lease is—that's—you're not given a deed. You're just, you know, somebody's got something that you want and you're willing to pay a price to get the right to lease. I don't think that's—you know, that's not appraisal theory leasehold interest.

An expert for the Appraisal District who was hired to investigate the market on lots at Lake Murvaul testified as follows: "Well, if you're going to buy—if you're going to try to buy a leasehold interest out there, you have to pay the leasehold price plus the contract rent."

An ownership interest in a leasehold is the legal right to possess that property for a set period of time (for the purpose of the Texas Property Tax Code, at least one year). The ownership of that right in this case has a measurable fair market value because there are people who are willing to purchase and do purchase that right to possess the property under the terms of the lease. Furthermore, the assignee of the leasehold may in turn convey his or her ownership right to another person and obtain the fair market value existing at that time. It is this fair market value that is taxable under the circumstances of this case. If the underlying fee simple were taxable, then the leasehold estate would be subsumed in the fee-simple estate. However, in the present case, the fee simple is owned by the Water District; therefore, because the Water District is not subject to taxation, the leasehold interest is.

In *Tarrant Appraisal Dist. v. Am. Airlines, Inc.*, 826 S.W.2d 767 (Tex.App.-Fort Worth 1992, writ denied), the court cited the case of *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 773 S.W.2d 949 (Tex.App.-Tyler 1989), *aff'd*, 801 S.W.2d 872 (Tex.1990). It is not comparable to the present case because the Cherokee Water Company was not a tax-exempt entity, but was the party being taxed in that case. The court draws from this case the fact that the leasehold value is subsumed within the value of the fee-simple estate, but this is only true when the fee-simple estate is taxable, which it is not in the present case. The only time that the leasehold value is not subsumed within the value of the fee-simple estate and due from the owner of the fee-simple estate is when the fee-simple estate is exempt from taxation. In that situation only, the Property Tax Code specifically provides that the leasehold interest is taxable to the lessee.

The court in *Tarrant Appraisal Dist.* also cites the *Cherokee Water Co.* case for the proposition that "[t]he possessory interest method, by capitalizing the rent remaining for the duration of the lease, is charging the taxable lessee with a tax-exempt lessor's property value." *Tarrant Appraisal Dist.*, 826 S.W.2d at 771 (citing *Cherokee Water Co.*, 773 S.W.2d at 955). This creates confusion as to what is being addressed in the *Cherokee Water Co.* case. In the *Cherokee Water Co.* case, the capitalization of income referred to monies received by the lessor, because it is the lessor (Cherokee Water Company, not a tax-exempt entity) being taxed in that case. In the present case, the lessor is not being taxed, and the lessees who are being taxed do not receive rental income from the property.

The trial court's attempt to limit the appraised value to the rent being paid by the lessees is a clear violation of the Texas Property Tax Code, which permits a leasehold interest to be valued at a fair market

value. Although, the amount of the lease at the time it is made is a factor to be considered in measuring the value of leasehold interests, the leasehold interests can increase in value, as other real estate interests, and the price that a willing buyer is willing to pay a willing seller for the leasehold interest can be considered in the evaluation. The market value as established by TEX. TAX CODE ANN. § 23.01(a) (Vernon Supp.2002) may be used in the formula calculating the value of the leasehold interest.

The Texas Property Tax Code does not specify the methodology to be used in calculating the fair market value, but it does require a methodology which will determine the fair market value of the interest being appraised.

Two principles set forth in the Property Tax Code are: (1) all property subject to ad valorem taxes must be evaluated at a fair market value; and (2) this is to be a current value established on January 1 of each year. TEX. TAX CODE ANN. § 23.01 (Vernon Supp.2002). Thus, the judgment of the trial court violates both of these principles and their broad scope because it limits the value, not to the fair market value at the time of the taxation, but to a time the leasehold rental was fixed by a contract, which may have been established twenty years, for example, prior to the evaluation for tax purposes, and it denies the taxing entity the right to have an appraisal based on the current market value.

### Review on Findings of Fact

■ The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex. App.-Houston [14th Dist.] 1990, no writ).

When deciding a no-evidence point, in determining whether there is no evidence of probative force to support a factual finding, we must consider all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998).

■ If we find some evidence of probative value, we test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995).

■ The findings of fact made by the trial court that are relevant to this appeal are the following:

• On July 23, 1998, the Panola County Appraisal Review Board placed a value on the Water District's property which used the wrong methodology and placed unequal appraisals on the property owned by the Water District.

• The methodology employed by defendants attempted to charge the taxable lessee with the tax-exempt lessor's property value.

• The methodology employed by defendants sought to include within the taxable value the right to reversion, which belongs

to and was retained by the Water District and thereby improperly sought to tax a tax-exempt interest.

The appraiser for the Appraisal District testified as follows:

Q. (By Mr. Anderson) You said you took a look at some deed transactions where fee simple interests were conveyed, did you not?

A. I think about three or four out of the 28 were, yes.

. . . .

Q. In your attempts to respond to this lawsuit and also in trying to come up with fair and equitable market values that are equal and uniform, have you looked at the differences between sales of fee interest versus leasehold interest?

A. Yes, I have.

Q. Have you found that there's any significant difference in the sale—sales price, the market value, between leasehold interest and fee interest?

A. No, sir. No discernible difference.

. . . .

Q. And you did that [referring to a list of comparables] both for the lease lots and for the fee simple lots?

A. Yes.

. . . .

Q. (By Mr. Anderson) I'm talking specifically about the deeded lot sales right now, sir.

When you say down at the bottom "sample group of deeded lot sales," are those fee simple conveyances, sir?

A. Yes.

There are some places in this testimony that suggest possible confusion about the terminology, specifically the meaning of *fee simple*. However, there was ample evidence for the trial court as trier of fact to have determined from the testimony that some fee-simple interests were used as comparables for the purpose of establishing a fair market value of leasehold interests. The key question in looking at the methodology is this: Does it attempt to appraise property which includes the reversionary interest and not belonging to the leasehold owner and not based on the fair market value of the leasehold? We find no evidence to show that there was any attempt to tax a reversionary interest, other than using erroneous comparables, as mentioned above. When the leasehold terminates, the leasehold owner, who is also the taxpayer, has no further interest in the property, and no tax lien can be placed on the reversionary interest. The taxing of the leasehold interest does not violate the Texas Property Tax Code.

To the extent that the Appraisal District applied a method which included in the comparables some fee-simple absolute values, which are not comparable to comparisons of leasehold estates, the trial court correctly found the methodology to be in error; however, on remand, the trial court should require a re-evaluation only to remove such comparables. The Appraisal District contends this was harmless error, because these comparables were approximately the same as the other comparables used; however, other than a general statement in the testimony, we found no other testimony to explain this with specificity. Furthermore, the possibility that erroneous comparables were used requires that this matter be reconsidered and these erroneous comparables removed from the formula establishing the fair market value.

We find that the evidence is legally and factually sufficient to support the trial court's use of the wrong methodology by the Appraisal District in its use of fee-simple ownerships as comparable to the lessees' ownership interests.

### Review on Conclusions of Law

■ The Appraisal District also complains about the conclusions of law made

by the trial court. We review conclusions of law de novo and uphold them if they may be sustained on any legal theory supported by the evidence.

The relevant conclusion of law is the following: Pursuant to Section 23.13, Texas Property Tax Code, the appraised value for each leasehold in question is the rent being paid by the lessees to the Water District for the tax year 1998 and subsequent tax years.

As previously discussed, a leasehold interest is an ownership in property. It is subject to taxation in accordance with this fair market value. The fair market value of a leasehold tends to diminish each year as the time on the lease also diminishes, but based on the demand of the market and the economics involved, the value of the ownership of the leasehold could increase. The trial court erred in limiting the value of the leasehold interest to the contract rental price on each lot, which in effect excludes the true market value for the purchase of the assignment of the remaining years that the leasehold interest may run.

We find that the trial court erred in reaching a conclusion of law that the appraised value for each leasehold in question would be the rental paid by the lessees to the Water District.

On remand, the trial court should require all comparables of fee-simple interests to be eliminated from the data used in establishing the fair market value of the leaseholds, but it should not limit the appraisal to the amount of annual rent being paid on the property.

The cause is reversed and remanded to the trial court for a new trial in accordance with this opinion.