Opinion filed August 5,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-08-00248-CV

                                                    __________

 

                        MONTE
J. LAND, CAROLYN J. LAND, ROBERT 

                      ALDRICH,
SCOTT WHEATLEY, HEATHER WHEATLEY, 

                    ALVIS
H. JACKSON, AND DEANA G. JACKSON, Appellants

 

                                                             V.

 

                     PALO
PINTO APPRAISAL DISTRICT, Appellee



 

                                   On
Appeal from the 29th District Court

 

                                                         Palo
Pinto County, Texas

 

                                                    Trial
Court Cause No. C41639



 

                                                                  O
P I N I O N

            This
is a property tax dispute.  Appellants are lessees of lots on Possum Kingdom Lake
that are owned by the Brazos River Authority (BRA).  Appellants filed suit
against Palo Pinto Appraisal District (PPAD) challenging the valuation of their
leasehold interest and improvements.  The trial court found for PPAD.  We
affirm.

I. 
Background Facts

             
Monte and Carolyn Land, Robert Aldrich, Scott and Heather Wheatley, and Alvis
and Deana Jackson (plaintiffs) lease lots on Possum Kingdom Lake that are owned
by BRA, a tax-exempt state agency.  Plaintiffs received notices of appraisal
with PPAD’s valuation of their leasehold interests and structures.  Plaintiffs
disagreed with PPAD’s appraisals, and they filed Notices of Protest.  The
Appraisal Review Board ruled against them, and plaintiffs then filed suit.  The
trial court conducted a bench trial and found the market value of plaintiffs’
leasehold interests and their leasehold interests with improvements.  The trial
court’s valuation of the Aldrich property was essentially consistent with
PPAD’s notice, but the other properties were significantly increased in value.[1]

II. 
Issues

            Plaintiffs
challenge the trial court’s judgment with four issues.  They contend that the
trial court erred by utilizing the comparable-sales method to evaluate their
leasehold interests, that the trial court erred by not considering the
individual characteristics of their leases, that the trial court erred by
utilizing a local modifier when valuing their improvements, and that the trial
court erred by not awarding them attorney’s fees.

III. 
Appraising Plaintiffs’ Leasehold Interest

            Because
BRA owns the property and is tax exempt, the value of its interest may not be
included in PPAD’s valuation.  Instead, it is the value of plaintiffs’
leasehold interest that is taxable.  Plaintiffs do not challenge the
sufficiency of the evidence relied upon by the trial court to value their
interests but contend that the trial court failed to follow the Tax Code
because it used the wrong valuation methodology.

A.    
 What Methodology May Trial Courts Utilize?

            The
legislature has provided guidance for appraising a lease of tax-exempt property,
writing:

            A
taxable leasehold or other possessory interest in real property that is exempt
from taxation to the owner of the estate or interest encumbered by the
possessory interest is appraised at the market value of the leasehold or other
possessory interest.  However, the appraised value may not be less than the
total rental paid for the interest for the current tax year.

 

Tex. Tax Code Ann. § 23.13 (Vernon
2008).  Plaintiffs concede that the legislature did not specify how market
value is calculated and that trial courts have discretion when determining the
appropriate methodology to employ.  But, they contend that the equity method –
the difference between market rent and their contract rent – is the proper
valuation method for leasehold estates such as theirs, and they cite Tarrant
Appraisal District v. American Airlines, Inc., 826 S.W.2d 767, 770 (Tex.
App.—Fort Worth 1992, writ denied), in support of this proposition.  Because
PPAD’s expert utilized a comparable sales approach and made no attempt to
ascertain market rent, plaintiffs conclude that their contract rent was
established as market rent and, therefore, that their leasehold interests should
be appraised at their annual rental.

PPAD
responds that the American Airlines decision does not mandate the use of
the equity method and that trial courts have the discretion to consider other
valuation methods and notes that the Tax Code specifically provides:  “In
determining the market value of property, the chief appraiser shall consider
the cost, income, and market data comparison methods of appraisal and use the
most appropriate method.”  Tex. Tax Code
Ann. § 23.0101 (Vernon
2008).  When the market data comparison method is utilized, the chief appraiser
shall “use comparable sales data and shall adjust the comparable sales to the
subject property.”  Tex. Tax Code Ann. § 23.013
(Vernon Supp. 2009).  PPAD also notes that plaintiffs’ expert, Albert Scruggs
Love Jr., testified that he would consider using comparable sales of leasehold
interests as part of his approach and that an appraisal guide he finds
authoritative, The Appraisal of Real Estate 12th Edition, allows their
use.

In
American Airlines, 826 S.W.2d 767, the Fort Worth court was faced with a
dispute over the valuation of American Airlines’s leasehold estate at DFW
Airport.  Because the land is owned by a tax-exempt entity, American Airlines
could only be taxed based upon the value of the leasehold.  American Airlines
argued that its interest should be valued based upon the equity method and that,
because its rent was equal to the fair market rent for the property, the
taxable value of its interest was equal to its annual rental.  Id. at
768.  The appraisal district advocated for the possessory method of valuation. 
It contended that, because American Airlines had the right to exclusive
possession and use of the property for the length of the lease, this right
could be valued by capitalizing the rental for the remainder of the lease. Id. 
The Fort Worth court agreed with American Airlines and, as noted by plaintiffs,
wrote: “[T]he equity method is the proper method to appraise a leasehold
interest on tax-exempt property.”  Id. at 771.  Despite this language,
however, we do not believe that the court meant to foreclose the use of
comparable sales and, if we are in error, do not believe that the Tax Code
does.

Neither
American Airlines nor the appraisal district offered evidence of comparable
sales.  Given the unique situation of a large leasehold at DFW Airport, that is
hardly surprising.  Con-sequently, the court was required to choose between the
equity and possessory methods of valuation.  The court rejected the possessory
method, in part, because its application would make that portion of Section 23.13
setting the annual rental as a floor superfluous.  Id. at 770.  But it
also noted that this method improperly charged the lessee with the lessor’s
property value.  Id. at 771.  Neither of these concerns is implicated by
a comparable sales approach. 

In
Panola County Appraisal District v. Panola County Fresh Water Supply District
Number One, 69 S.W.3d 278 (Tex. App.—Texarkana 2002, no pet.), the court
was faced with a dispute over the appraisal of leasehold interests on lake lots
that were owned by a tax-exempt entity.  The court held that comparable sales
could be used to evaluate those interests but cautioned “true comparables would
be derived from sales of leasehold interests, not from sales of fee-simple
interests.”  Id. at 283.  

PPAD’s
expert, James Daniels, testified that he was asked to appraise the value of plaintiffs’
leasehold estates.  As part of his work, he researched real estate sales at the
lake and found several sales of leasehold interests where the land was owned by
BRA.  Daniels explained how he valued the plaintiffs’ interests using these
comparables, and he offered his opinion of the value of each leasehold.

            Plaintiffs
did not offer any valuation evidence other than the amount of their annual
rentals, and they did not object to PPAD’s comparable sales testimony.[2] 
Their position, therefore, necessarily rests upon the proposition that the
trial court was required to follow the equity valuation method or that it was
precluded from considering comparable sales.  We find neither compelling.  The
trial court was required to determine the fair market value of plaintiffs’
interests without including the value of BRA’s interest.  Because the trial
court has some discretion to choose a methodology, because the Tax Code
identifies comparable sales as an appropriate methodology, and because
Daniels’s appraisals only valued plaintiffs’ leasehold interests, the trial
court did not err by considering comparable sales.  Issue One is overruled.

B.    
 Did the Trial Court Consider the Individual Characteristics of Plaintiffs’
Leases? 

            PPAD
utilized a mass appraisal process.  The Tax Code authorizes this but requires
that it be done in compliance with the Uniform Standards of Professional
Appraisal Practice and that each property be appraised based upon the
individual characteristics that affect its market value. Tex. Tax Code Ann. § 23.01(b) (Vernon
Supp. 2009).  Plaintiffs argue that the trial court failed to follow this
statute because it did not consider factors such as the length of their leases.

            PPAD
responds that it did consider individual characteristics but that they did not
result in any valuation adjustments because the market did not adjust sales
prices to reflect individual lease terms.  Donna Rhoades is the chief appraiser
for PPAD.  Rhoades testified that her office investigated the relationship
between the terms of BRA leases – both length and rent – and sales prices and
found no correlation.  She attributed this to the fact that BRA would enter
into a new lease to match a purchaser’s loan.  Daniels also testified that he
looked at and considered lease terms but found that they did not impact sales
prices.  He gave as an example two comparable sales with significantly
different lease lengths.  One property sold for $83,500.  The other sold for
$84,500.

Plaintiffs
contend that Rhoades and Daniels are improperly assuming that BRA will always
renegotiate leases on request.  However, the question before the trial court
was the market value of plaintiffs’ property as of January 1, 2006.  Predicting
BRA’s future conduct necessarily involves risk, but the trial court heard uncontroverted
evidence that, at least as of that date, the market did not discount sales
prices because of the remaining length of a lease or because of any other
specific lease provision.  Because Tex.
Tax Code Ann. § 23.01 (Vernon Supp. 2009) limits consideration to
characteristics that affect market value and because no witness testified that
market value was impacted by lease terms, the trial court did not err in its
valuation of plaintiffs’ leasehold estates.  Issue Two is overruled.

IV.  Appraising Plaintiffs’ Improvements

            The Lands
and the Wheatleys contend that the trial court erred by considering a location
modifier when it valued their improvements.  When different individuals or
entities own the land and improvements, their interests are valued separately. Tex. Tax Code Ann. §§ 25.04, .08
(Vernon 2008).  Rhoades testified that, when the Lands’ property was appraised,
PPAD used a multiplier that she described as an economic factor or location
modifier.  PPAD utilizes the Marshall & Swift service to obtain a baseline
value for construction costs.  The modifier is applied to this value to reflect
the cost to build in Palo Pinto County.  Daniels was critical of this approach
during his deposition because he believed that it attributed a portion of the
location’s value to the value of the improvements.  At trial, Daniels testified
that, if he were interested solely in extracting the leasehold value, he would
utilize a different method than employed by PPAD but that their methodology was
acceptable when performing mass appraisals and that it resulted in a correct
valuation of the leasehold interest plus improvements.  He attributed the
change in opinion to having given more thought to how a local modifier worked
when using a mass appraisal technique.  Daniels explained that, if you prepare
an appraisal using an on-site estimate from a contractor, the additional cost
to build in that particular location will necessarily be included but when an
appraisal district does a mass appraisal and uses a cost estimation service
such as Marshall & Swift, a location modifier is necessary.

            Plaintiffs
impeached Daniels by highlighting the change in testimony, but they offered no
alternative valuation and did not object to Rhoades’s valuation testimony.  The
trial court did not err when it valued plaintiffs’ improvements.  Issue Three
is overruled.  Because the trial court correctly valued plaintiffs’ interests,
they are not entitled to attorney’s fees, and Issue Four is also overruled.

V.  Conclusion

            The judgment of the
trial court is affirmed.

 

 

                                                                                                RICK
STRANGE

                                                                                                JUSTICE

 

August 5, 2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]The Lands’ property value increased from $351,000 to
$469,260.  The Jacksons’ property value increased from $359,050 to $472,140.  The
Wheatleys’ property value increased from $132,010 to $296,630.  The Aldrich property
value decreased from $161,420 to $161,190.





                [2]The Lands filed a pretrial motion to exclude PPAD’s
experts but did not obtain a ruling on this motion.