**Opinion filed August 5, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00248-CV

_____

## MONTE J. LAND, CAROLYN J. LAND, ROBERT ALDRICH, SCOTT WHEATLEY, HEATHER WHEATLEY, ALVIS H. JACKSON, AND DEANA G. JACKSON, Appellants

V.

## PALO PINTO APPRAISAL DISTRICT, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C41639**

### O P I N I O N

This is a property tax dispute. Appellants are lessees of lots on Possum Kingdom Lake that are owned by the Brazos River Authority (BRA). Appellants filed suit against Palo Pinto Appraisal District (PPAD) challenging the valuation of their leasehold interest and improvements. The trial court found for PPAD. We affirm.

I. *Background Facts*

Monte and Carolyn Land, Robert Aldrich, Scott and Heather Wheatley, and Alvis and Deana Jackson (plaintiffs) lease lots on Possum Kingdom Lake that are owned by BRA, a tax-exempt state agency. Plaintiffs received notices of appraisal with PPAD's valuation of their

leasehold interests and structures. Plaintiffs disagreed with PPAD's appraisals, and they filed Notices of Protest. The Appraisal Review Board ruled against them, and plaintiffs then filed suit. The trial court conducted a bench trial and found the market value of plaintiffs' leasehold interests and their leasehold interests with improvements. The trial court's valuation of the Aldrich property was essentially consistent with PPAD's notice, but the other properties were significantly increased in value.[1]

## II. *Issues*

Plaintiffs challenge the trial court's judgment with four issues. They contend that the trial court erred by utilizing the comparable-sales method to evaluate their leasehold interests, that the trial court erred by not considering the individual characteristics of their leases, that the trial court erred by utilizing a local modifier when valuing their improvements, and that the trial court erred by not awarding them attorney's fees.

## III. *Appraising Plaintiffs' Leasehold Interest*

Because BRA owns the property and is tax exempt, the value of its interest may not be included in PPAD's valuation. Instead, it is the value of plaintiffs' leasehold interest that is taxable. Plaintiffs do not challenge the sufficiency of the evidence relied upon by the trial court to value their interests but contend that the trial court failed to follow the Tax Code because it used the wrong valuation methodology.

### A. *What Methodology May Trial Courts Utilize?*

The legislature has provided guidance for appraising a lease of tax-exempt property, writing:

> A taxable leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or interest encumbered by the possessory interest is appraised at the market value of the leasehold or other possessory interest. However, the appraised value may not be less than the total rental paid for the interest for the current tax year.

TEX. TAX CODE ANN. § 23.13 (Vernon 2008). Plaintiffs concede that the legislature did not specify how market value is calculated and that trial courts have discretion when determining the appropriate methodology to employ. But, they contend that the equity method – the difference between market rent and their contract rent – is the proper valuation method for leasehold estates

---

[1]The Lands' property value increased from $351,000 to $469,260. The Jacksons' property value increased from $359,050 to $472,140. The Wheatleys' property value increased from $132,010 to $296,630. The Aldrich property value decreased from $161,420 to $161,190.

such as theirs, and they cite *Tarrant Appraisal District v. American Airlines, Inc.*, 826 S.W.2d 767, 770 (Tex. App.—Fort Worth 1992, writ denied), in support of this proposition. Because PPAD's expert utilized a comparable sales approach and made no attempt to ascertain market rent, plaintiffs conclude that their contract rent was established as market rent and, therefore, that their leasehold interests should be appraised at their annual rental.

PPAD responds that the *American Airlines* decision does not mandate the use of the equity method and that trial courts have the discretion to consider other valuation methods and notes that the Tax Code specifically provides: "In determining the market value of property, the chief appraiser shall consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method." TEX. TAX CODE ANN. § 23.0101 (Vernon 2008). When the market data comparison method is utilized, the chief appraiser shall "use comparable sales data and shall adjust the comparable sales to the subject property." TEX. TAX CODE ANN. § 23.013 (Vernon Supp. 2009). PPAD also notes that plaintiffs' expert, Albert Scruggs Love Jr., testified that he would consider using comparable sales of leasehold interests as part of his approach and that an appraisal guide he finds authoritative, *The Appraisal of Real Estate 12th Edition*, allows their use.

In *American Airlines*, 826 S.W.2d 767, the Fort Worth court was faced with a dispute over the valuation of American Airlines's leasehold estate at DFW Airport. Because the land is owned by a tax-exempt entity, American Airlines could only be taxed based upon the value of the leasehold. American Airlines argued that its interest should be valued based upon the equity method and that, because its rent was equal to the fair market rent for the property, the taxable value of its interest was equal to its annual rental. *Id.* at 768. The appraisal district advocated for the possessory method of valuation. It contended that, because American Airlines had the right to exclusive possession and use of the property for the length of the lease, this right could be valued by capitalizing the rental for the remainder of the lease. *Id.* The Fort Worth court agreed with American Airlines and, as noted by plaintiffs, wrote: "[T]he equity method is the proper method to appraise a leasehold interest on tax-exempt property." *Id.* at 771. Despite this language, however, we do not believe that the court meant to foreclose the use of comparable sales and, if we are in error, do not believe that the Tax Code does.

Neither American Airlines nor the appraisal district offered evidence of comparable sales. Given the unique situation of a large leasehold at DFW Airport, that is hardly surprising. Consequently, the court was required to choose between the equity and possessory methods of

3

valuation. The court rejected the possessory method, in part, because its application would make that portion of Section 23.13 setting the annual rental as a floor superfluous. *Id.* at 770. But it also noted that this method improperly charged the lessee with the lessor's property value. *Id.* at 771. Neither of these concerns is implicated by a comparable sales approach.

In *Panola County Appraisal District v. Panola County Fresh Water Supply District Number One*, 69 S.W.3d 278 (Tex. App.—Texarkana 2002, no pet.), the court was faced with a dispute over the appraisal of leasehold interests on lake lots that were owned by a tax-exempt entity. The court held that comparable sales could be used to evaluate those interests but cautioned "true comparables would be derived from sales of leasehold interests, not from sales of fee-simple interests." *Id.* at 283.

PPAD's expert, James Daniels, testified that he was asked to appraise the value of plaintiffs' leasehold estates. As part of his work, he researched real estate sales at the lake and found several sales of leasehold interests where the land was owned by BRA. Daniels explained how he valued the plaintiffs' interests using these comparables, and he offered his opinion of the value of each leasehold.

Plaintiffs did not offer any valuation evidence other than the amount of their annual rentals, and they did not object to PPAD's comparable sales testimony.[2] Their position, therefore, necessarily rests upon the proposition that the trial court was required to follow the equity valuation method or that it was precluded from considering comparable sales. We find neither compelling. The trial court was required to determine the fair market value of plaintiffs' interests without including the value of BRA's interest. Because the trial court has some discretion to choose a methodology, because the Tax Code identifies comparable sales as an appropriate methodology, and because Daniels's appraisals only valued plaintiffs' leasehold interests, the trial court did not err by considering comparable sales. Issue One is overruled.

*B. Did the Trial Court Consider the Individual Characteristics of Plaintiffs' Leases?*

PPAD utilized a mass appraisal process. The Tax Code authorizes this but requires that it be done in compliance with the Uniform Standards of Professional Appraisal Practice and that each property be appraised based upon the individual characteristics that affect its market value. TEX. TAX CODE ANN. § 23.01(b) (Vernon Supp. 2009). Plaintiffs argue that the trial court failed to follow this statute because it did not consider factors such as the length of their leases.

---

[2]The Lands filed a pretrial motion to exclude PPAD's experts but did not obtain a ruling on this motion.

PPAD responds that it did consider individual characteristics but that they did not result in any valuation adjustments because the market did not adjust sales prices to reflect individual lease terms. Donna Rhoades is the chief appraiser for PPAD. Rhoades testified that her office investigated the relationship between the terms of BRA leases – both length and rent – and sales prices and found no correlation. She attributed this to the fact that BRA would enter into a new lease to match a purchaser's loan. Daniels also testified that he looked at and considered lease terms but found that they did not impact sales prices. He gave as an example two comparable sales with significantly different lease lengths. One property sold for $83,500. The other sold for $84,500.

Plaintiffs contend that Rhoades and Daniels are improperly assuming that BRA will always renegotiate leases on request. However, the question before the trial court was the market value of plaintiffs' property as of January 1, 2006. Predicting BRA's future conduct necessarily involves risk, but the trial court heard uncontroverted evidence that, at least as of that date, the market did not discount sales prices because of the remaining length of a lease or because of any other specific lease provision. Because TEX. TAX CODE ANN. § 23.01 (Vernon Supp. 2009) limits consideration to characteristics that affect market value and because no witness testified that market value was impacted by lease terms, the trial court did not err in its valuation of plaintiffs' leasehold estates. Issue Two is overruled.

IV. *Appraising Plaintiffs' Improvements*

The Lands and the Wheatleys contend that the trial court erred by considering a location modifier when it valued their improvements. When different individuals or entities own the land and improvements, their interests are valued separately. TEX. TAX CODE ANN. §§ 25.04, .08 (Vernon 2008). Rhoades testified that, when the Lands' property was appraised, PPAD used a multiplier that she described as an economic factor or location modifier. PPAD utilizes the Marshall & Swift service to obtain a baseline value for construction costs. The modifier is applied to this value to reflect the cost to build in Palo Pinto County. Daniels was critical of this approach during his deposition because he believed that it attributed a portion of the location's value to the value of the improvements. At trial, Daniels testified that, if he were interested solely in extracting the leasehold value, he would utilize a different method than employed by PPAD but that their methodology was acceptable when performing mass appraisals and that it resulted in a correct valuation of the leasehold interest plus improvements. He attributed the change in opinion to having given more thought to how a local modifier worked when using a

5

mass appraisal technique. Daniels explained that, if you prepare an appraisal using an on-site estimate from a contractor, the additional cost to build in that particular location will necessarily be included but when an appraisal district does a mass appraisal and uses a cost estimation service such as Marshall & Swift, a location modifier is necessary.

Plaintiffs impeached Daniels by highlighting the change in testimony, but they offered no alternative valuation and did not object to Rhoades's valuation testimony. The trial court did not err when it valued plaintiffs' improvements. Issue Three is overruled. Because the trial court correctly valued plaintiffs' interests, they are not entitled to attorney's fees, and Issue Four is also overruled.

V.  *Conclusion*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

August 5, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.