# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20640

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2018

Lyle W. Cayce
Clerk

2200 West Alabama, Incorporated,

> Plaintiff - Appellee

v.

Western World Insurance Company,

> Defendant - Appellant

Appeal from the United States District Court for
the Southern District of Texas
USDC 4:16-CV-2244

Before JONES, BARKSDALE, and WILLETT, Circuit Judges.

PER CURIAM:*

At issue is whether Western World Insurance Company's policy's providing a duty to defend for "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a . . . premises that a person occupies" requires physical presence on, or possession of, the premises. Western World challenges the district court's, on cross-motions for summary judgment, denying it to Western World and granting it to 2200 West Alabama, Incorporated.  VACATED AND RENDERED.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 17-20640

I.

Western World issued a commercial-general-lines policy to 2200 West Alabama covering damages, and any suits, related to "personal and advertising injuries", effective 15 December 2013.  Dubrow Partners sued 2200 West Alabama in state court the following year (during the policy period) for damages arising from negotiations for, and a claimed breach of, a lease agreement (third-party action).

Concerning the third-party action, 2200 West Alabama, as landlord, had previously executed a written lease agreement with Soray LLC for the premises.   Four years into the lease, Soray liquidated its assets, including its rights under the lease with 2200 West Alabama.  Soray sold its lease rights in September 2014.  The purchaser assigned its leasehold interest to Dubrow (a partnership formed for the purpose of opening and operating a restaurant on the premises).

Dubrow alleges in the third-party action:   2200 West Alabama's representatives consented to the lease assignment, and negotiations of its terms began with 2200 West Alabama; during those negotiations, Dubrow took steps towards opening a restaurant on the premises, including "ordering equipment, hiring employees, building a website, acquiring and transferring permits such as the liquor license, and working with professional architects to finalize space plans", as well as "undertaking a marketing campaign in an effort to publicize its anticipated opening"; 2200 West Alabama repudiated the lease agreement and any previous consent to the lease assignment by Soray; the parties had essentially agreed to all terms of the lease except those related to valet parking; and Dubrow was, therefore, the "rightful tenant".  The third-party action is ongoing.

2200 West Alabama tendered defense of the third-party action to Western World, claiming it owed 2200 West Alabama a duty to defend under

No. 17-20640

the terms of the policy. In response, Western World disclaimed any duty to defend, asserting the policy did not cover the third-party action because Dubrow never occupied the premises.

In response, 2200 West Alabama filed this action in state court against Western World, seeking, *inter alia*, a declaratory judgment. Western World removed the action to district court based on diversity jurisdiction.

Both parties moved for summary judgment. The district court granted it to 2200 West Alabama, and denied Western World's cross-motion. In doing so, the court agreed with 2200 West Alabama's policy construction: coverage exists for a right to occupancy, with physical presence not being required. Therefore, under the eight-corners rule, discussed *infra*, the court concluded the complaint in the third-party action triggered the duty-to-defend provision in the policy.

## II.

In challenging the summary judgment awarded 2200 West Alabama, Western World claims the policy requires physical presence, as opposed to a mere right to occupy, to trigger the duty-to-defend provision. Along that line, the policy language at issue provides coverage for "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a . . . premises that a person occupies". (It is undisputed that Dubrow is a "person" for policy purposes.)

Western World contends: the policy language "that a person occupies" creates a secondary requirement beyond "the right of occupancy"; and such a construction is most consistent with the plain language of the policy without rendering any language superfluous. Therefore, Western World asserts: the third-party action falls outside the policy coverage because Dubrow never *occupied* the premises; and, therefore, there is no duty to defend the third-party

3

action.  (Because judgment is rendered for Western World on this basis, we need not address its alternative positions.)

The policy states it will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'".  The operative questions in this appeal are: how to define a "personal and advertising injury"; and whether Dubrow's claim in its third-party action constitutes such an injury.  The policy defines a "personal and advertising injury", in part, as:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
>      . . .
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises *that a person occupies*, committed by or on behalf of its owner, landlord or lessor[.]

(Emphasis added.)

A judgment on cross-motions for summary judgment is reviewed *de novo*. *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007) (citation omitted).  "On [such] review, the motions are reviewed independently, with evidence and inferences taken in the light most favorable to the nonmoving party."  *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005) (citation omitted).  The judgment is "affirm[ed] only if there is no genuine [dispute] of material fact and one party is entitled to prevail as a matter of law".  *Cedyco Corp.*, 497 F.3d at 488 (citing *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004)); *see* Fed. R. Civ. P. 56(a).

Texas substantive law applies to this diversity-jurisdiction case.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).  And, in deciding whether there is a duty to defend, Texas recognizes the eight-corners rule:  courts

cannot look beyond the complaint in the third-party action and the language of the insurance policy. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) ("[A]n insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations".) (internal quotation marks omitted). "The insured bears the initial burden of establishing that a claim against it is potentially within the policy's coverage"; "[i]f the petition *only* alleges facts excluded by the policy . . . the insurer is not required to defend". *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (emphasis in original). If there is "doubt as to whether . . . the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor". *Id.* (internal quotations omitted).

Considering, under the eight-corners rule, only the facts alleged in the complaint in the third-party action, and the policy provisions, there is no doubt to be resolved in favor of 2200 West Alabama regarding whether the claim is "potentially within the policy's coverage". *Id.* It is not. As discussed *infra*, because Texas law has determined the word "occupy" in a commercial-general-lines policy to be unambiguous, and to require more than a mere right to occupancy, 2200 West Alabama fails to meet its burden under the eight-corners rule. In other words, because the complaint in the third-party action does not "allege[] at least one cause of action potentially within the policy's coverage", Western World has no duty to defend 2200 West Alabama. *Id.*

### A.

Texas law requires courts to "interpret insurance policies in Texas according to the rules of contract interpretation". *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998) (citations omitted). This includes not only construing unambiguous terms according to their plain

meaning, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008), but also attempting to "'give effect to all provisions so that none will be meaningless'", *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)).  "Whether a contract is ambiguous is a question of law for the court to decide by looking at the policy as a whole in light of the circumstances present when the contract was entered." *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015) (citing *Kelley-Coppedge*, 980 S.W.2d at 464).

As noted, Texas cases have held the word "occupy" in an insurance policy to be unambiguous.  *See Kelley-Coppedge*, 980 S.W.2d at 467 (holding the policy language "unambiguously does not apply to exclude coverage").  Importantly, the insurance language in *Kelley-Coppedge* was not the identical "that a person occupies" language at issue here.  *Id.*  In instances where the State's highest court has not spoken to the direct question, federal courts are required to make an "'*Erie* guess and determine, in [their] best judgment how [that highest court] would resolve the issue if presented with the same case'". *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (first alteration in original) (quoting *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)).  In doing so, our court "defer[s] to intermediate state appellate court decisions, 'unless convinced by other persuasive data that the highest court of the state would decide otherwise'".  *Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (quoting *Hermann Holdings, Ltd. v. Lucent Tech., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).

Policy language is not ambiguous simply because the parties disagree, *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003), but rather when the "language of a policy is susceptible to more than one construction",

No. 17-20640

*Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)). Texas intermediate appellate courts have previously held the term "occupy" as used in a commercial-general-lines insurance policy to be "unambiguous". *Liberty Mut. Fire Ins. Co. v. Lexington Ins. Co.*, 446 S.W.3d 835, 844 (Tex. App. 2014) (citing *Kelley-Coppedge*, 980 S.W.2d at 467).

For our *Erie* review, the reliance by 2200 West Alabama on non-Texas case law concluding the language is ambiguous is not applicable. *See, e.g., Sell v. Nationwide Mut. Ins. Co.*, 492 F. App'x 740, 743 (9th Cir. 2012) (applying California law); *Hobbs Realty & Constr. Co. v. Scottsdale Ins. Co.*, 593 S.E.2d 103, 108 (N.C. App. 2004) (applying North Carolina law). Moreover, the Texas Supreme Court has ruled an insurance policy is not ambiguous "merely because . . . other courts differ over its interpretation". *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 24 (Tex. 2015) (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997)).

Accordingly, as further discussed *infra*, the policy language "that a person occupies" is unambiguous, based on Texas intermediate court application of the Texas Supreme Court's holding in *Kelley-Coppedge*; and, the plain meaning of the word "occupies" requires physical presence or possession, *see Liberty Mut. Fire Ins. Co.*, 446 S.W.3d at 844 (citing *Kelley-Coppedge*, 980 S.W.2d at 467).

B.

In *Kelley-Coppedge*, the Texas Supreme Court addressed whether a policy provision excluded coverage for plaintiff's cleanup costs after a contractor inadvertently struck an oil pipeline while temporarily on an easement, damaging the surrounding property by the release of crude oil. 980 S.W.2d at 463–64. The question turned on whether a subcontractor was "occup[ying]" the easement when he used it only temporarily and transitorily.

7

*Id.* at 467.  The Texas Supreme Court held:  the exclusion applied only if the subcontractor was occupying the easement; and even transient use could not satisfy that provision's "occupied by" requirement, because any other interpretation conflicted with the plain meaning of "occupy".  *Id.*

"Under *Kelley-Coppedge,* the term 'occupy'—in an 'own, rent, or occupy' exclusion in a commercial general liability policy that does not otherwise define occupy—means 'to hold or keep for use.'"  *Liberty Mut. Fire Ins. Co.*, 446 S.W.3d at 846.  In *Liberty*, the court addressed the "physical presence" aspect of occupancy:  "[w]e hold that 'occupy' comprises (1) a continued physical presence and (2) control of the premises for the insured's own benefit".  *Id.*

"To determine the ordinary meaning of a term not defined in the [policy], courts typically begin with the dictionary definition."  *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.3d 119, 128 (5th Cir. 2017) (citing *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011) (collecting cases)).  The 10th edition of Black's Law Dictionary defines "occupy" as:

> **occupy** *vb.* **1.** To seize or take possession of; esp., to enter and take control of (a place) <the Iraqis briefly occupied Kuwait>. **2.** To take up the extent, space, room, or time of <the company's headquarters occupy 20 acres>. **3.** To hold possession of; to be in actual possession of <Queen Elizabeth II occupies the throne>. **4.** To employ; to possess or use the time or capacity of <the computer industry occupies millions of workers>. **5.** To use (money) in commerce; to invest; to employ for profit <to occupy $10 million in the venture>. **6.** To live or stay in (a place) <he occupies the apartment without paying rent>.

*Occupy*, Black's Law Dictionary (10th ed. 2014).  On the other hand, 2200 West Alabama urges the Sixth Edition of Black's Law Dictionary is applicable; it included "to tenant" (i.e., "renting land") within the definition of "occupy".  *Occupy*, Black's Law Dictionary (6th ed. 1991).

This earlier definition of "occupy" is unpersuasive, because the applicable Black's Law Dictionary is the tenth edition, given the policy covered the years 2013-2014.  *E.g., Motor Vehicle Cas. Co. v. Atlantic Nat'l Ins. Co.*, 374

F.2d 601, 605 (5th Cir. 1967) (internal citation omitted) (under principles of contract construction, the meaning and application of plain words are to be judged in the light of the situation of parties at time of making agreement); *cf. Wis. Cent. Ltd. v. United States*, --- U.S. ---, 138 S. Ct. 2067, 2074 (2018) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)). The majority of the above-stated current definitions of "occupy" support a plain meaning requiring physical presence or possession. *Occupy*, Black's Law Dictionary (10th ed. 2014).

Additionally, and although addressing the definition of "hospital" in an insurance policy, not "occupy", the Texas Supreme Court's analysis in *Guardian Life Ins. Co. of Am. v. Scott*, 405 S.W.2d 64 (Tex. 1966), is instructive. There, the court addressed whether an institution met the definition of "hospital" (i.e., whether it "*has* organized facilities for the care and treatment" of patients like X-ray or laboratory equipment). *Id.* at 65 (emphasis added). The court concluded it was not a hospital for the purposes of coverage because it merely "had *access*" to the requisite facilities required by the policy at other local hospitals with which it was affiliated. *Id.* (emphasis added). Because terms must be given their "ordinary and generally accepted meaning", and "has" is the present tense of the verb "to have", which was defined as, *inter alia*, "possession or control", the policy's requiring an institution "have" certain facilities meant it needed "possession or control" of such facilities on the premises themselves, and mere access alone was insufficient to trigger coverage. *Id.* We are persuaded by the Texas Supreme Court's analysis that an insurance policy excludes coverage when policy language requires "possession", but a party can allege only "access".

We are left with the conclusion "occupies" requires physical presence or possession, particularly given its use in the present-tense verb form. As Western World notes in its brief, the word "occupies" appears in the present-tense form, and indicates a concurrent condition. And, as in *Guardian Life*

*Ins.*, the policy language "occupies" is also the present-tense form of the verb "to occupy", which is similarly-defined as requiring an element of possession above and beyond mere access. *Occupy*, Black's Law Dictionary (10th ed. 2014). In its present-tense form, this demonstrates the nature of the occupancy must be ongoing to satisfy the policy requirement.

Read in the context of the provision as a whole, it makes sense to require physical presence or possession to satisfy "occupies": one cannot be "evicted" from a premises where he or she has never taken physical possession or maintained a presence. Along that line, Black's Law Dictionary defines a "wrongful-eviction action" as "a lawsuit brought by a former tenant or possessor of real property against one who has put the plaintiff out of possession". *Wrongful-eviction action*, Black's Law Dictionary (10th ed. 2014). In turn, "possession" is defined as, *inter alia*, "[t]he fact of having or holding property in one's power; the exercise of dominion over property". *Possession*, Black's Law Dictionary (10th ed. 2014).

The parties do not dispute Dubrow never took physical possession of the "premises" from 2200 West Alabama. Without any physical possession of the premises, Dubrow never "occupied" it.

## C.

Finally, 2200 West Alabama's interpretation would require eliminating the language "that a person occupies". As discussed *infra*, the policy language in issue includes, *inter alia*, the "invasion of the right of private occupancy"; to define "that a person occupies" as nothing more than the "right of occupancy" creates redundancy and renders the language superfluous. Texas law does not condone such an outcome. *See, e.g., Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014) ("[I]nterpretations of contracts as a whole are favored so that none of the language in them is rendered surplusage".); *see also*

No. 17-20640

*Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 833 F.3d 470, 474 (5th Cir. 2016) (citing *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157).

The language "wrongful eviction from, wrongful entry into, *or* invasion of the right of private occupancy" contains phrases separated by "or". (Emphasis added.)  This creates alternative factual scenarios satisfying policy coverage.  *See, e.g., Capps v. Am. Mut. Liab. Ins. Co.*, 601 S.W.2d 816, 817 (Tex. Civ. App. 1980) (where context of insurance policy so demands, courts must read the word "or" as disjunctive to give policy provision proper effect and meaning).  The next phrase, "of a room, dwelling or premises" narrows the range of locations where such factual scenarios could occur to trigger coverage. And, as noted, the final phrase, "that a person occupies" creates a secondary condition-precedent modifying the preceding phrase "of a room, dwelling or premises".  Read as a whole, there are three possible factual circumstances that *could* trigger coverage, but only if they take place in a room, dwelling, or premises occupied by "a person".

A factual scenario can be envisioned where one has either a right to occupy, or is physically occupying, a premises, but not both.  Possession and use are, after all, defined as separate "sticks" within a greater "bundle" of property rights.  *Property*, Black's Law Dictionary (10th ed. 2014).  A violation of the lease—a contractual interest—manifests itself as a breach-of-contract action.  It would be inimical to the common understanding of leasehold interests to describe a lease repudiation as an eviction.  *See, e.g., Wade v. Madison*, 206 S.W. 118, 119 (Tex. Civ. App. 1918) ("It seems settled, however, that ordinarily breaches of express covenants . . . do not forfeit the right of possession or confer the right of re-entry"); *Farmers & Bankers Life Ins. Co. v. St. Regis Paper Co.*, 456 F.2d 347, 349–51 (5th Cir. 1972) (deciding a lease repudiation on a solely contractual basis).  *Compare Evict*, Black's Law Dictionary (10th ed. 2014) ("To expel (a person, esp. a tenant) from real

11

property"), *with Repudiate*, Black's Law Dictionary (10th ed. 2014) ("To reject or renounce (a duty or obligation); esp. to indicate an intention not to perform"). On the other hand, a person with both rights (i.e., right to occupancy *and* possession) could also claim wrongful eviction, rather than purely contract breach.

Constructed in this way, each phrase is given its own distinct meaning within the greater provision as a whole. If read as 2200 West Alabama urges, "the right of private occupancy" and "that a person occupies" would be functionally synonymous. Again, if read as 2200 West Alabama urges, "the right of private occupancy" would control, and "that a person occupies" would be rendered superfluous.

The basis of the third-party action is that Dubrow had a contractual right to occupancy as the "rightful tenant", but it was denied its rights under the leasehold contract by 2200 West Alabama. It concedes as much in its briefing here: it contends the complaint in the third-party action established facts sufficient to trigger the duty to defend under the eight-corners rule because the complaint alleged Dubrow was the "rightful tenant[] of the space", and 2200 West Alabama "wrongfully deprived Dubrow of its alleged right to access and use the premises". A contractual right to the premises alone is insufficient to satisfy the policy language triggering the duty to defend. That claim, although it arguably satisfies one factual scenario of the policy coverage—invasion of the right of private occupancy—fails to trigger a duty to defend: the third-party action does not satisfy the condition-precedent of actual occupancy, because, by its nature, its claim is that Dubrow was denied possession.

## III.

For the foregoing reasons, the judgment for 2200 West Alabama is VACATED; judgment is RENDERED for Western World.